748 F.2d 861
 Charles Edward CALVERT, Appellee,
v.
Dr. Nathaniel SHARP, Appellant,
and
Warden Paul Davis, Maryland House of Correction, Jessup,
Maryland; Dr. Bear of the Maryland House of
Corrections, Defendants.
 No. 83-6569.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 6, 1984.
Decided Nov. 9, 1984.
 
 David H. Bamberger, Baltimore, Md. (E. Fremont Magee, Baltimore, Md., on brief), for appellant.
 Devarieste Curry, Third Year Law Student, Appellate Litigation Clinic, Georgetown University Law Center (Steven H. Goldblatt, Director, Appellate Litigation Clinic, Samuel Dash, Director, Susan Siegal, Appellate Law Fellow, Washington, D.C., Mark J. Swerdlin, Student Counsel, on brief), for appellee.
 Before WIDENER, SPROUSE and CHAPMAN, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 Appellant, Dr. Nathaniel Sharp, is a private physician to whom Respondent, Charles Edward Calvert, was referred. Calvert, an inmate at the Maryland Penitentiary, brought this action against Dr. Sharp and two other defendants pursuant to 42 U.S.C. Sec. 1983 for the violation of his eighth amendment rights by their alleged failure to provide him with medical treatment. Dr. Sharp moved (1) for the dismissal of the complaint for lack of subject matter jurisdiction on the grounds that he did not act under color of state law and (2) for summary judgment. The trial judge denied both motions. Dr. Sharp appealed from the denial of his motion to dismiss the complaint. We reverse.
 
 
 2
 The central issue is whether Dr. Sharp, in exercising his medical judgment as to what, if any, medical treatment to provide Calvert, can be fairly seen to have acted under color of state law.
 
 
 3
 * Dr. Sharp is a private orthopedic specialist employed by Chesapeake Physicians, P.A. (CPPA). CPPA is a Maryland nonprofit professional corporation employing numerous physicians and other health personnel and providing private medical services to the general public throughout the Baltimore area. CPPA also provides medical services to the inmates at the Maryland House of Corrections and the Maryland Penitentiary through a contract with the State of Maryland. Dr. Sharp would examine and treat inmates at these facilities upon referral from other physicians.
 
 
 4
 Calvert was incarcerated first at the Maryland House of Correction from April 1980 until March 1981 when he was transferred to the Maryland Penitentiary. He suffers several physical ailments, and from April 1980 through May 1982, medical personnel examined or treated him on over seventy different occasions. Calvert was referred to Dr. Sharp on five separate occasions from July 1980 through December 1981. He does not allege that Sharp refused to see him, but that Sharp did not treat him on these visits.
 
 
 5
 Calvert claimed that such failure violated his eighth amendment rights. Dr. Sharp moved to dismiss the complaint because of a lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). He asserted that under Polk County v. Dodson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), he had not acted under color of state law in exercising his medical judgment. The trial judge denied his motion, holding that Dr. Sharp did act under color of state law according to Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). We disagree and reverse.
 
 II
 
 6
 To maintain a Sec. 1983 action a plaintiff must establish as a jurisdictional requisite that the defendant acted under color of state law. Polk County, 454 U.S. at 315, 102 S.Ct. at 448. A person acts under color of state law "only when exercising 'power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " Id. at 317-18, 102 S.Ct. at 449 (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941) ). The ultimate issue in determining if a person is subject to suit under Sec. 1983 is whether the alleged infringement of federal rights is fairly attributable to the state. Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). This is a fact-bound inquiry. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 939, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982).
 
 
 7
 Because Calvert is an inmate we have liberally construed his pro se complaint and his response to Dr. Sharp's motions in making this inquiry.[1] Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). We have also examined the evidence submitted to us in the record in determining that subject matter jurisdiction does not exist.[2] This is proper under a 12(b)(1) motion to dismiss. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982).
 
 III
 
 8
 In Polk County, the Supreme Court held that a public defender, employed by the state, did not act under color of state law in deciding not to perfect an appeal she believed to be frivolous. Although the attorney's employment relationship with the state was a relevant factor, the attorney's function was determinative in resolving whether she acted under color of state law. Polk County, 454 U.S. at 319, 102 S.Ct. at 450. As a matter of law the professional obligations and functions of an attorney establish that an attorney does not act under color of state law when representing a prisoner even though the attorney is employed by the state. Id.
 
 
 9
 Unlike the attorney in Polk County, Dr. Sharp is privately employed. Private physicians exercise their own judgment and make their own medical decisions according to standards not established by the state. Blum v. Yaretsky, 457 U.S. 991, 1008-09, 102 S.Ct. 2777, 2788, 73 L.Ed.2d 534 (1982). Their physician-patient relationships are the same, with the same obligations and duties, both within and without the prison walls. A private physician is not, and by the nature of his function cannot be the servant of an administrative superior. See The American Medical Association Standards for Health Services in Prisons (Standard 102 states: "Matters of medical ... judgment are the sole province of the responsible physician.") (emphasis added). The American Medical Association Principles of Medical Ethics; The Hippocratic Oath. The ethical obligations of physicians date back to the time of the ancient Greeks. E.g., The Hippocratic Oath.
 
 
 10
 In his brief Calvert recognizes that a physician owes his ethical obligation and undivided loyalty to his patient. The loyalty owed by Dr. Sharp was potentially adverse to the interests of the state. Dr. Sharp had no supervisory or custodial functions. Compare Polk County with Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (in Estelle and Gamble the physicians were employed directly by the state and had custodial or supervisory functions). Sharp's function and obligation was solely to cure orthopedic problems.
 
 
 11
 In exercising his judgment in the treatment of inmates, the private physician performs a private function traditionally filled by retained physicians. The professional obligations and functions of a private physician establish that such a physician does not act under color of state law when providing medical services to an inmate. See Hall v. Quillen, 631 F.2d 1154 (4th Cir.1980); see also Blum, 457 U.S. at 1008-09, 102 S.Ct. at 2788; cf. Polk County, 454 U.S. at 319-24, 102 S.Ct. at 450-53 (in which the Supreme Court discusses the obligations and functions of attorneys).
 
 IV
 
 12
 The Supreme Court has advanced a number of other factors to determine if a private act is done under color of state law. The parties discuss two: the dependence of the actor on the state for funds, Rendell-Baker, 457 U.S. at 840-41, 102 S.Ct. at 2771-72 (1982), and the performance by the actor of a "public function", Id. at 842, 102 S.Ct. at 2772.
 
 
 13
 Dr. Sharp is not dependent upon the State for funds. He is employed by CPPA and not the State. Nor is CPPA dependent on the State for funds. CPPA provided services not just to the two Maryland correctional facilities but to the general public as well. "Acts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Id. at 841, 102 S.Ct. at 2771.
 
 
 14
 Dr. Sharp's position is analogous to that of the public defender found not to be a state actor in Polk County. There the Supreme Court found that the attorney-client relationship did not change even though the state paid the attorney. Polk County, 454 U.S. at 321, 102 S.Ct. at 451. Here the relationship between Dr. Sharp and his patient does not change because the state pays Dr. Sharp's employer.
 
 
 15
 Nor was Dr. Sharp engaged in a "public function." The ultimate determination is whether the function performed has been " 'traditionally the exclusive prerogative of the State.' " Blum, 457 U.S. at 1011, 102 S.Ct. at 2789 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)) (emphasis added). The State of Maryland provides that sick prisoners may be removed from an institution if its facilities are inadequate, and they may be taken to any place within the State where adequate treatment may be obtained. The expenses for this removal are to be paid (1) by the prisoner, his relatives, or his friends, (2) from funds available for the hospital expenses of prisoners, or (3) by the county, city, or town from which the inmate was incarcerated. Md. Code Ann. art. 27 Sec. 698 (1982). The provision of medical services performed by private physicians and paid for by the prisoner, his relatives, or friends, is not within the exclusive prerogative of the state.
 
 
 16
 Furthermore, Dr. Sharp's specific function was the diagnosis and treatment of orthopedic problems. This clearly is not within the exclusive prerogative of the state.
 
 V
 
 17
 Calvert and the trial judge rely on Estelle v. Gamble to support the position that Dr. Sharp acted under color of state law by denying him medical treatment. This reliance is misplaced. Estelle establishes that the deliberate indifference by a state to the serious medical needs of an inmate is a violation of the eighth amendment and can support a Sec. 1983 action. Nevertheless, a plaintiff must still establish that the defendant acted under color of state law. Polk County, 454 U.S. at 315, 102 S.Ct. at 448. Estelle does not mandate, as Calvert claims and the trial judge held, that a person who violates an inmate's eighth amendment rights is automatically acting under color of state law. Whether the physician acted under color of state law was not at issue in Estelle.
 
 
 18
 Furthermore, in Polk County, the Supreme Court distinguished Estelle and O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) as follows:
 
 
 19
 O'Connor involved claims against a psychiatrist who served as the superintendent at a state mental hospital. Although a physician with traditionally private obligations to his patients, he was sued in his capacity as a state custodian and administrator. Unlike a lawyer, the administrator of a state hospital owes no duty of "undivided loyalty" to his patients. On the contrary, it is his function to protect the interest of the public as well as that of his wards. Similarly, Estelle involved a physician who was the medical director of the Texas Department of Corrections and also the chief medical officer of a prison hospital. He saw his patients in a custodial as well as a medical capacity.
 
 
 20
 Because of their custodial and supervisory functions, the state-employed doctors in O'Connor and Estelle faced their employer in a very different posture than does a public defender. Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve.
 
 
 21
 Polk County, 454 U.S. at 320, 102 S.Ct. at 450-451.
 
 
 22
 Dr. Sharp is a privately employed specialist who treats private patients as well as inmates. He did not have any custodial or supervisory duties. His obligation was not to the mission of the state but to treat patients referred to him by other physicians. He did not act under color of state law.
 
 
 23
 Normally when there is a factual question common to the merits as well as to jurisdiction, a resulting dismissal should be on the merits. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). However, in the present case the district court certified for interlocutory appeal under 28 U.S.C. Sec. 1292(b) only its denial of the motion to dismiss, which is all that we address or decide in this opinion.
 
 
 24
 The judgment of the district court is reversed and the complaint against Dr. Sharp dismissed.
 
 
 25
 REVERSED.
 
 
 
 [1]
 Plaintiff alleges: "The aforementioned people contributed to my failing health through their incompetency, nealigence [sic] and methods of dispering [sic] medical treatment." These are complaints about the quality of the medical treatment and do not amount to deliberate indifference to serious medical needs, the constitutional test. Estelle v. Gamble, 429 U.S. at 106, 97 S.Ct. at 292
 
 
 [2]
 In his opinion the trial judge relied exclusively on Estelle to deny Dr. Sharp's motion to dismiss. As we discuss in Part V, infra, Estelle is distinguishable from this case