**Quincy WEST, Appellant,**

**v.**

**Samuel ATKINS;  Rae McNamara; James B. Hunt, Appellees.**

No. 85–6483.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1986.

Decided April 9, 1987.

Richard E. Giroux, North Carolina Prisoner Legal Services, Inc., Raleigh, N.C., on brief, for appellant.

Jacob L. Safron, Sp. Deputy Atty. Gen. (Lacy H. Thornburg, Atty. Gen., Raleigh, N.C., on brief), for appellee.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS Circuit Judges, sitting en banc.

CHAPMAN, Circuit Judge:

In *Calvert v. Sharp*, 748 F.2d 861, 863 (4th Cir.1984), *cert. denied*, 471 U.S. 1132, 105 S.Ct. 2667, 86 L.Ed.2d 283 (1985), we held that "[t]he professional obligations and functions of a private physician establish that such a physician does not act under color of state law when providing medical services to an inmate." Prisoner West brought this § 1983 action against a private physician who was under contract for part-time employment with the state to provide two orthopedic clinics per week at North Carolina Central Prison Hospital. Because we perceive no valid reason to overrule or distinguish *Calvert*, we affirm the district court's dismissal of the appellant's claim.

## I.

West tore the Achilles tendon in his left leg while playing basketball on July 30, 1983. Dr. Atkins examined West and concluded that surgery could be avoided if the tendon would grow back together by itself. Atkins therefore placed West's leg in a cast and prescribed medication. West has alleged that the attention given to his injured leg was so inadequate as to be actionable under 42 U.S.C. § 1983.

North Carolina Central Prison Hospital, where West is imprisoned, has one full-time staff doctor, with additional medical services provided under "contracts for professional services" with area doctors. Dr. Atkins, by contract, conducted two clinics per week at the prison. Atkins also maintained a private practice. It does appear that, because West is a prisoner in "close custody," he is not free to seek outside medical assistance.

West's § 1983 theory alleged a denial of his right to be free from cruel and unusual punishment, as defined by the Eighth Amendment. West sought compensatory and punitive damages from Dr. Atkins, compensatory and punitive damages from Rae McNamara, Director of the Division of Prisons of the North Carolina Department of Corrections, and a declaratory judgment against James B. Hunt, Governor of the State of North Carolina.

## II.

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), that the deliberate indifference by a state to the serious medical needs of an inmate is a violation of the Eighth Amendment and can support a § 1983 action. To establish a § 1983 claim, a plaintiff must also show that the defendant acted under color of state law, an element which was not in issue in *Estelle*. The Supreme Court addressed the requirements for establishing that a defendant,

who is a professional, acted under color of state law in the case of *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). *Dodson* held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 325, 102 S.Ct. at 453 (footnote omitted). Instead, "[h]eld to the same standards of competence and integrity as a private lawyer, ... a public defender works under canons of professional responsibility that mandate his exercise of independent judgment on behalf of the client." *Id.* at 321, 102 S.Ct. at 451. The court noted, moreover, that "[b]ecause of their custodial and supervisory functions, the state-employed doctors in [*O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) ] and *Estelle* faced their employer in a very different posture than does a public defender." *Dodson* at 320, 102 S.Ct. at 451. Thus the clear and practicable principle enunciated by the Supreme Court, and followed in *Calvert*, is that a professional, when acting within the bounds of traditional professional discretion and judgment, does not act under color of state law, even where, as in *Dodson*, the professional is a full-time employee of the state.[1] Where the professional exercises custodial or supervisory authority, which is to say that he is not acting in his professional capacity, then a § 1983 claim can be established, provided the requisite nexus to the state is proved.

In *Calvert* an inmate sued a private orthopedic specialist for an alleged failure to treat. The defendant was employed by a non-profit professional corporation, which in turn contracted with the state. We held that because private physicians exercise independent, professional judgment and render medical care in accordance with professional obligations, a physician when rendering such medical services does not act under color of state law. The defendant in *Calvert* had no supervisory or custodial functions.

■ We find the reasoning suggested by the appellant to differentiate the rule in *Dodson* from that enunciated in *Calvert* unpersuasive. Although the opinion in *Dodson* does point out that a public defender in effect plays a role adversarial to the interests of the state, that reasoning was the basis upon which the Supreme Court concluded that a professional may act without color of state law even when he is a full-time employee. In other words, even a full-time employee who is a professional can act without color of state law where his role in essence is adversarial to the interests of the state. Thus, "a public defender is not amenable to administrative direction in the same sense as other employees of the State." *Dodson* at 321, 102 S.Ct. at 451. We do not need to address the problematic issue of whether the nature of the doctor-patient relationship can at times be adverse to the interests of the state. Where the professional is acting within the bounds of professional discretion and obligation, his independence from administrative direction is assured.

■ The appellant is probably correct in his argument that the rule enunciated in *Dodson*, and followed in *Calvert*, has the effect of limiting the range of professionals subject to an *Estelle* action. This effect, however, is entirely consonant with the requirements of § 1983, which statute subjects the individual to liability only where he has acted under color of state law in violating a constitutional right. In any event, it is not for this court to tamper with the limitation of § 1983 liability established

---

1. *Dodson* held that the employment relationship is only a "relevant factor" in determining whether the professional acted under color of state law. The primary consideration, established in *Dodson*, is the defendant's "function." Thus, the plaintiff would have to prove that the employment relationship created such an overbearing environment that the exercise of the independent professional judgment, the primary test, was impossible. The simple allegation of a close employment relationship between the state and the professional, absent any proof that that relationship had the effect of precluding independent judgment, is insufficient to satisfy the "color of state law" element of a § 1983 claim. The employment relationship is but one factor in determining whether the professional exercised independent judgment.

in *Dodson*. We therefore decline to overrule *Calvert v. Sharp*.[2]

### III.

■ The appellant suggests that should this court decline to overrule its prior decision, we should distinguish it. We decline to do so. The fact that the doctor in *Calvert* was employed by a professional corporation, which in turn had contracted with the state, whereas Dr. Atkins, a sole practitioner, entered into that contract himself, makes no difference. A professional exercises his professional discretion pursuant to his professional obligations whether he practices alone or in a group. The effect of adopting the distinction suggested by the appellant would be to absolve one professional from liability concerning the same course of conduct and wilful failure to treat undertaken by another professional simply on the grounds that the former had associated himself with a group practice. Liability for a constitutional violation arising from a wrong done to an inmate should not rest on the contractual arrangement entered into by the putative defendant with third parties. The effect of such a rule would be to discourage any professional not associated with a group practice from serving the medical needs of prisoners. Such a rule would have the deleterious effect of increasing the cost and reducing the availability of medical services for prisons.

The other grounds of distinction proffered by the appellant are equally unpersuasive.

### IV.

We find no reason to disturb the district court's dismissal of the appellant's claims against appellees McNamara and Hunt. Pursuant to 28 U.S.C. § 1915(d), claims made by pro se litigants can be dismissed if frivolous: that is, if "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Boyce v. Alizaduh*, 595 F.2d 948, 951 (4th Cir.1979), *quoting Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

■ Respondeat superior is not available for § 1983 actions, and so the appellant must allege personal involvement by appellees Hunt and McNamara in the deprivation of his constitutional rights. Because the alleged deprivation of constitutional rights in this case involved the alleged failure to render medical services properly, the "personal involvement" of these appellees must be relevant to the alleged deprivation. The appellant has alleged no facts which would show that appellees McNamara or Hunt had the authority to overrule the medical judgment of Dr. Atkins. The fact that the appellant had mailed to appellee McNamara two letters complaining about Dr. Atkins' treatment does not suffice to render McNamara liable for Atkins' medical judgments. We therefore affirm the district court's dismissal of these claims.

AFFIRMED.

HARRISON L. WINTER, Chief Judge, concurring and dissenting:

When the panel heard this appeal, 799 F.2d 923, it could not, under our established practice, question the correctness of the holding in *Calvert v. Sharp*, 748 F.2d 861 (4 Cir.1984), *cert. denied*, 471 U.S. 1132, 105 S.Ct. 2667, 86 L.Ed.2d 283 (1985). At most, it could seek to distinguish *Calvert*, if a reasonable basis for distinction could be developed, or it could conclude that the correctness of *Calvert* was not presented because the physician who treated West was not guilty of deliberate indifference to West's serious medical needs. The panel opinion, in which I joined, pursued much the latter course. It sought to have the district court determine whether the physician was chargeable with deliberate indifference so that the necessity of

---

2. We also reject appellant's contention that the provision of medical services to the inmates is an "exclusive state function." Decisions made in the day-to-day rendering of medical services by a physician are not the kind of decisions traditionally and exclusively made by the sovereign for and on behalf of the public. *See Blum v. Yaretsky*, 457 U.S. 991, 1012, 102 S.Ct. 2777, 2790, 73 L.Ed.2d 534 (1982).

addressing the correctness of distinguishability of *Calvert* could be certain.

An in banc court possesses greater authority. It is free to re-examine the correctness of the court's precedents and to overrule them if it determines that they were incorrectly decided. As a member of the in banc court, I am of the view that *Calvert* is an aberration and that it should be overruled. Alternatively, I think that *Calvert* should be confined to its facts and that this case is sufficiently different so as to render *Calvert* inapplicable.

I would therefore reverse the summary judgment in favor of Dr. Atkins, and I respectfully dissent from the majority's contrary decision. I concur, however, in affirming the dismissal of the action against McNamara and Hunt.[1]

## I.

There are several grounds for concluding that services rendered by prison doctors—whether permanent members of a prison medical staff, or under limited contract with the prison—constitute action "under color" of state law, for purposes of § 1983, and that, as a consequence, *Calvert* was wrongly decided.

### A. Prison doctors are state actors

Without doubt such state employees as prison guards and wardens are "state actors" subject to § 1983 liability. Moreover, the panel in *Calvert* implicitly conceded that a doctor who is (1) permanently employed on the medical staff of a prison, and (2) who has "custodial and supervisory duties" acts "under color of state law" when treating prisoners. The question then becomes whether the absence of either of these factors requires a different conclusion. I think not.

All employment relationships are regulated by contract. The fact that the con-

tractual arrangement between Dr. Atkins and the prison does not require Dr. Atkins to work exclusively for the prison should not strip his conduct of its essentially governmental nature when he is performing such service. Indeed, as the majority opinion notes, "[l]iability for a constitutional violation arising from a wrong done to an inmate should not rest on the contractual arrangement entered into by the putative defendant with third parties." *Ante* at 996.

The absence of custodial and supervisory functions is equally irrelevant to the state action issue. Although the Supreme Court, in *Polk County v. Dodson*, 454 U.S. 312, 319–21, 102 S.Ct. 445, 450–51, 70 L.Ed.2d 509 (1981), invoked this factor to contrast the role of the public defender in *Polk* with that of the doctors in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), I think that the *Calvert* panel misapplied this discussion in *Polk*. *Estelle* did not turn on the supervisory role of the doctor there; the complaint was premised solely on the medical treatment given. *See Estelle*, 429 U.S. at 103, 97 S.Ct. at 290; *id.* at 104, n. 10, 97 S.Ct. at 291, n. 10 (citing with approval several court of appeals decisions upholding claims of deliberate indifference without any mention of supervisory and custodial duties). *See also Polk*, 454 U.S. at 331, 102 S.Ct. at 456 (Blackmun J., dissenting) (noting that claims in *Estelle* and *O'Connor* were unrelated to the custodial and supervisory functions of the doctors there). I think it clear that *Polk* turned on the inherently adversarial relationship between public defenders and the state. 454 U.S. at 320–22, 102 S.Ct. at 450–51.[2] The *Polk* Court discussed the custodial and supervisory functions of the doctors in *Estelle* and *O'Connor* simply in order to highlight the cooperative relationship between the doctors and the state and

---

1. The record contains no evidence that Hunt had notice of West's complaints and, in my view, such evidence is so scant as to McNamara's notice that I perceive no basis on which to hold them liable. Of course, § 1983 does not recognize liability under the doctrine of respondeat superior.

2. Although *Calvert* asserts that "[t]he loyalty owed by Dr. Sharp was potentially adverse to the interests of the state," 748 F.2d at 863, no basis for this speculation is offered, nor does one readily spring to mind.

thus the absence of an adversarial relationship akin to that existing between public defenders and the state. There is no suggestion that performance of custodial and supervisory duties is a prerequisite for a finding that doctors act under color of state law. Indeed, such a requirement would bar many deliberate indifference claims: it seems unlikely that those with supervisory and custodial functions will often be directly involved with patient care, yet § 1983 is not available for claims based on the principle of respondeat superior.

There is no significant difference between the doctor-employees in *Estelle* and *O'Connor*, and Drs. Atkins and Sharp. While Dr. Sharp had a contract with a professional association which, in turn, had a contract with the state, it is fair to say that each of these doctors worked under contract with the state, received payment from state funds, were subject to regulation by state and professional review boards, and performed services that the state is obligated to provide to prison inmates.

The majority's assertion in this case, that where a "professional is acting within the bounds of professional discretion and obligation, his independence from administrative direction is assured" (*ante* at 995), is supported by nothing in the record, and completely disregards the American Medical Association Standards for Health Services in Prisons (1979), that prescribe the relationship between medical personnel and other prison officials as one of "close cooperation and coordination"; a "joint effort." Preface at i; Std. 102 & Discussion. The rationale employed by the majority would preclude a § 1983 action against any medical professional who has treated a prison inmate since, by virtue of the exercise of their 'independent professional' judgment, they could never be considered state actors—notwithstanding the holding in *Estelle v. Gamble.*

Defendants' brief argues that contractual medical service providers are "indepen-

dent contractors rather 'than ... employees," noting that no social security taxes are withheld from their paychecks and they receive no benefits enjoyed by state employees. But if this is the basis for delimiting § 1983 liability, the state will be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to "private" actors, when they have been denied. Such a result is intolerable.

### B. "Public Function" Rationale

Action "under color" of state law will be found if an otherwise private party performs a function that has been "traditionally the exclusive prerogative of the State." *Blum v. Yaretzky,* 457 U.S. 991, 1011, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982). The incarceration of convicted criminals surely falls within that category. And because "[a]n inmate must rely on prison authorities to treat his medical needs ... [it is] the *government's obligation* to provide medical care for those whom it is punishing by incarceration.... '[I]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'" *Estelle,* 429 U.S. at 103–04, 97 S.Ct. at 290–91 (emphasis added) (citations omitted). *Accord Bowring v. Godwin,* 551 F.2d 44, 46–47 (4 Cir.1977).

The panel in *Calvert,* 748 F.2d at 864, and the majority opinion here, *ante* at 996 n. 2, asserted that medical care is not within the exclusive prerogative of the state. That observation, however, is incorrect in the *prison context,* where the state has complete control over the circumstances and sources of a prisoner's medical treatment.[3] The view espoused here has been explicitly endorsed in other cases where the doctor operates under contract to the state. A good example is *Ort v. Pinchback,* 786 F.2d 1105, 1107 (11 Cir.1986):

---

**3.** Although in *Calvert,* and unlike the situation in this case, the prisoners were allowed to go outside the prison to a doctor of their choice,

this privilege was available only by virtue of a state statute. 748 F.2d at 864.

... we hold that the district court erred as a matter of law in concluding that a physician who contracts with the state to provide medical care to inmates does not act under color of state law. In *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir.1985), we pointed out that medical personnel need not be state employees in order that their actions be considered state action under 42 U.S.C. § 1983. We held that the employees of a private entity hired by a county to provide medical care to jail inmates acted under color of state law so as to be subject to liability under § 1983. *Id.* at 703. Dr. Pinchback similarly performed "a function which is traditionally the exclusive prerogative of the state" when he took over the state's responsibility for attending to inmate medical needs. *Id.; see Morrison v. Washington County, Ala.*, 700 F.2d 678, 683 (11th Cir.1983). *See also Hall v. Ashley*, 607 F.2d 789 (8 Cir.1979) (upholding § 1983 deliberate indifference action against orthopedic surgeon operating under contract to prison). *Cf. Briley v. State of Cal.*, 564 F.2d 849, 853, 856 (9 Cir.1977) ("private" physician, "while serving as [county] medical examiner and advising at the [plea] bargaining stage, was clearly clothed with the authority of state law, satisfying the 'state action' requirement of § 1983").

C.  "Joint Action" Rationale

"It is enough that [a private party] is a willful participant in joint activity with the State or its agents" to render him liable under § 1983. *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966). *Accord Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931–32, 102 S.Ct. 2744, 2750–51, 73 L.Ed.2d 482 (1982). Thus, even if we assume that the doctor is not a public employee, the integral role that he plays within the prison medical system nevertheless qualifies his actions therein as "under color" of state law. The AMA Standards for Health Services in Prisons, described *supra*, provide that medical personnel and other prison officials are to operate in "close cooperation and coordination" with each other, in a "joint effort." There is no reason to believe that this mandate applies differently depending on the nature of the employment contract between doctor and prison.

It is significant to note that the Supreme Court in *Polk* recognized the viability of the joint participation rationale, but found it inapplicable to the adversarial relationship between the state and the public defender in that case. 454 U.S. at 322 n. 12, 102 S.Ct. at 451 n. 12. More significant is the subsequent decision in *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984), where the Court held that even a public defender acts under color of state law when he conspires with state officials to deprive another of constitutional rights. The same principle holds for prison doctors.

D.  Impact of relationship with the state

Critical to *Calvert*'s conclusion that the doctor did not act under color of state law was the panel's repeated assertion that the doctor-patient relationship was in no way changed by virtue of the doctor's employment by the state. 748 F.2d at 863–64. From this the panel concluded that the doctor was an independent actor, rather than a true agent of the state. However, this position ignores the AMA standards cited *supra*, which dictate close cooperation between the doctor and other state officials. Conversely, to the extent that *Calvert* is correct in its description of the ethical obligations of physicians, 748 F.2d at 863, these obligations would be the same for the *medical decisions* of the staff doctors in *Estelle* and *O'Connor*, who are acknowledged to act under color of state law.

Thus I conclude that *Calvert* is fatally flawed. It should not be followed here. Indeed, it should be overruled. Consistent with *Estelle* and *O'Connor*, Dr. Atkins should be found to have acted under color of state law in providing medical care to West.

II.

Even if my rejection of *Calvert* is not well-founded, I do not believe that decision controls the outcome here. I perceive the

following valid bases for distinguishing this case from *Calvert:*

A.  Absence of prisoner-patient choice of doctor/medical care

Although it argued that diagnosis and treatment are not the exclusive prerogative of the state, the *Calvert* panel answered the "public function" argument primarily by stressing that Maryland law allows inmates to go outside the prison and obtain medical care of their choice. In this case, however, North Carolina law bars all but minimum security prisoners (which West is *not*) from exercising such an option. West was thus totally dependent on the state's chosen medical care providers; for West, that meant Dr. Atkins. If there was any uncertainty in *Calvert* that the medical care received by that plaintiff was exclusively within the state's control, such uncertainty is not present in this case. Dr. Atkins was chosen by North Carolina to fulfill the state's constitutional obligation to provide inmates like West with adequate medical care. North Carolina should not be permitted to plead a lack of responsibility because it delegated the task to a "private" party.

The Fifth Circuit adopted this view in *Robinson v. Jordan,* 494 F.2d 793, 794–95 (5 Cir.1974):

> The trial judge alternatively stated: "It additionally appears that a doctor hired to treat prisoners is not acting under color of state law…. This holding was erroneous since Dr. Gates acted solely in his official capacity as a county health officer in treating appellant. This was state action…. Dr. Gates was not acting as a private physician but treated Robinson at the Sheriff's request because of his official employment.
>
> The cases relied on by the district judge holding that suits may not be maintained under Section 1983 against privately retained attorneys or court-appointed attorneys are inapposite. Robinson's detention prevented his seeking a physician of his choice. He did not enjoy the option of dismissing his doctor and securing another such as that open to a client dissatisfied with an attorney, appointed or retained. He was required to depend totally upon Dr. Gates, the county physician. (citations omitted)

B.  Dependence on the state

Although *Calvert* found Dr. Sharp to have abundant non-state resources, 748 F.2d at 863, it appears (although the record is too sparse to be certain) that Dr. Atkins was heavily dependent on state funds. Moreover, it seems that Dr. Atkins' private practice, outside the prison, was significantly more limited than Dr. Sharp's. The risk that Dr. Atkins would feel compelled to adapt his medical judgments to accommodate his state employer, in conformity with the AMA's mandate to cooperate with the state, is far greater in these circumstances.

C.  Absence of an intermediary

Dr. Atkins was employed directly by the state, much as any other state employee, including the doctors in *Estelle* and *O'Connor.* Dr. Sharp, however, was employed by a private association, which in turn was under contract to the state—a factor emphasized in *Calvert,* 748 F.2d at 863. The presence of the intermediary in *Calvert* helped to insulate Dr. Sharp from state administrative influence and pressure—a buffer unavailable to Dr. Atkins in this case.

These considerations serve to distinguish *Calvert* and to limit it to its discrete facts. If *Calvert* is not to be overruled, and it is my preference to do so, I think that it should be so limited.

For these reasons, I would reverse the summary judgment for Dr. Atkins that was granted by the district court and remand the case for further proceedings. In short, I would hold that Dr. Atkins acted under color of state law in treating West, and I would direct the district court to determine if Dr. Atkins is chargeable with deliberate indifference to West's medical needs.

Judge PHILLIPS and Judge ERVIN authorize me to say that they join in this opinion.