# WEST *v.* ATKINS

No. 87–5096.   Argued March 28, 1988—Decided June 20, 1988

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, MARSHALL, STEVENS, O'CONNOR, and KENNEDY, JJ., joined. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 58.

*Adam Stein* argued the cause for petitioner. With him on the brief was *Richard E. Giroux*.

*Jacob L. Safron*, Special Deputy Attorney General of North Carolina, argued the cause for respondent. With him on the brief was *Lacy H. Thornburg*, Attorney General.*

JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the question whether a physician who is under contract with the State to provide medical services to inmates at a state-prison hospital on a part-time basis acts "under color of state law," within the meaning of 42 U. S. C. § 1983, when he treats an inmate.

I

Petitioner, Quincy West, tore his left Achilles tendon in 1983 while playing volleyball at Odom Correctional Center, the Jackson, N. C., state prison in which he was incarcerated. A physician under contract to provide medical care to Odom inmates examined petitioner and directed that he be

*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union Foundation et al. by *John Powell, Norman Smith, Elizabeth Alexander, Edward I. Koren,* and *Alvin J. Bronstein;* and for the American Public Health Association by *William J. Rold.*

transferred to Raleigh for orthopedic consultation at Central Prison Hospital, the acute-care medical facility operated by the State for its more than 17,500 inmates. Central Prison Hospital has one full-time staff physician, and obtains additional medical assistance under "Contracts for Professional Services" between the State and area physicians.

Respondent, Samuel Atkins, M. D., a private physician, provided orthopedic services to inmates pursuant to one such contract. Under it, Doctor Atkins was paid approximately $52,000 annually to operate two "clinics" each week at Central Prison Hospital, with additional amounts for surgery.[1] Over a period of several months, he treated West's injury by placing his leg in a series of casts. West alleges that although the doctor acknowledged that surgery would be necessary, he refused to schedule it, and that he eventually discharged West while his ankle was still swollen and painful, and his movement still impeded. Because West was a prisoner in "close custody," he was not free to employ or elect to see a different physician of his own choosing.[2]

---

[1] Doctor Atkins' contractual duties included the following: to provide two orthopedic clinics per week; to see all orthopedic and neurological referrals; to perform orthopedic surgery as scheduled; to conduct rounds as often as necessary for his surgical and other orthopedic patients; to coordinate with the Physical Therapy Department; to request the assistance of neurosurgical consultants on spinal surgical cases; and to provide emergency on-call orthopedic services 24 hours per day. His contract required him to furnish two days of professional service each week in fulfillment of these duties. App. 24–25. Atkins also had supervisory authority over Department of Correction nurses and physician's assistants, who were subject to his orders. *Id.*, at 28.

Apparently, respondent maintained a private practice apart from his work at the prison. Atkins' submissions on his motion for summary judgment, however, do not reflect the extent of his nonprison practice or the extent to which he depended upon the prison work for his livelihood.

[2] North Carolina law bars all but minimum-security prisoners from exercising an option to go outside the prison and obtain medical care of their choice at their own expense or funded by family resources or private health insurance. See North Carolina Division of Prisons Health Care Procedure

Pursuant to 42 U. S. C. § 1983,[3] West, proceeding *pro se*, commenced this action against Doctor Atkins[4] in the United States District Court for the Eastern District of North Carolina for violation of his Eighth Amendment right to be free from cruel and unusual punishment.[5] West alleged that Atkins was deliberately indifferent to his serious medical needs, by failing to provide adequate treatment.

Relying on a decision of its controlling court in *Calvert* v. *Sharp*, 748 F. 2d 861 (CA4 1984), cert. denied, 471 U. S. 1132 (1985), the District Court granted Doctor Atkins' motion for summary judgment. In *Calvert*, the Fourth Circuit held that a private orthopedic specialist, employed by a nonprofit professional corporation which provided services under contract to the inmates at the Maryland House of Corrections

---

Manual §§ 710.1–710.2 (1980), App. to Brief for Petitioner 15a–16a (promulgated pursuant to 5 N. C. Admin. Code § 02E.0203 (1987) and N. C. Gen. Stat. §§ 148–11, 148–19 (1987)). Petitioner is not a minimum-security prisoner.

[3] Section 1983 provides in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[4] Doctor Atkins is represented here by the Attorney General of North Carolina. By statute, the State provides for representation and protection from liability for any person who provides medical services to inmates and who is sued pursuant to § 1983. See N. C. Gen. Stat. § 143–300.7 (1987). The State has informed its contract physicians, however, that it will not provide them with representation and indemnification in malpractice actions.

[5] West also named as defendants James B. Hunt, then Governor of the State of North Carolina, and Rae McNamara, Director of the Division of Prisons of the North Carolina Department of Correction. The District Court's dismissal of West's claims against Hunt and McNamara was affirmed on appeal. See 815 F. 2d 993, 996 (CA4 1987). West has not pursued his actions against those defendants before this Court.

and the Maryland Penitentiary, did not act "under color of state law," a jurisdictional requisite for a § 1983 action. Because Doctor Atkins was a "contract physician," the District Court concluded that he, too, was not acting under color of state law when he treated West's injury. App. 37.

A panel of the United States Court of Appeals for the Fourth Circuit vacated the District Court's judgment. 799 F. 2d 923 (1986). Rather than considering if *Calvert* could be distinguished, the panel remanded the case to the District Court for an assessment whether the record permitted a finding of deliberate indifference to a serious medical need, a showing necessary for West ultimately to prevail on his Eighth Amendment claim. See *Estelle* v. *Gamble*, 429 U. S. 97, 104 (1976).

On en banc rehearing, however, a divided Court of Appeals affirmed the District Court's dismissal of West's complaint. 815 F. 2d 993 (1987). In declining to overrule its decision in *Calvert*, the majority concluded:

> "Thus the clear and practicable principle enunciated by the Supreme Court [in *Polk County* v. *[Dodson,]* 454 U. S. 312 (1981)], and followed in *Calvert*, is that a professional, when acting within the bounds of traditional professional discretion and judgment, does not act under color of state law, even where, as in *Dodson*, the professional is a full-time employee of the state. Where the professional exercises custodial or supervisory authority, which is to say that he is not acting in his professional capacity, then a § 1983 claim can be established, provided the requisite nexus to the state is proved." 815 F. 2d, at 995 (footnote omitted).

The Court of Appeals acknowledged that this rule limits "the range of professionals subject to an *Estelle* action." *Ibid.*[6]

---

[6] In addition, the Court of Appeals rejected petitioner's contention that the provision of medical services to inmates is an "exclusive state function." The court explained: "Decisions made in the day-to-day rendering of medical services by a physician are not the kind of decisions traditionally

The dissent in the Court of Appeals offered three grounds for holding that service rendered by a prison doctor—whether a permanent member of a prison medical staff, or under limited contract with the prison—constitutes action under color of state law for purposes of § 1983. First, the dissent concluded that prison doctors are as much "state actors" as are other prison employees, finding no significant difference between Doctor Atkins and the physician-employees assumed to be state actors in *Estelle,* and in *O'Connor* v. *Donaldson,* 422 U. S. 563 (1975). See 815 F. 2d, at 997–998. Second, the dissent concluded that the "public function" rationale applied because, in the prison context, medical care is within "the exclusive prerogative of the State," in that the State is obligated to provide medical services for its inmates and has complete control over the circumstances and sources of a prisoner's medical treatment. *Id.,* at 998–999, citing *Blum* v. *Yaretsky,* 457 U. S. 991, 1011 (1982). Finally, the dissent reasoned that the integral role the prison physician plays within the prison medical system qualifies his actions as under color of state law. 815 F. 2d, at 999, citing *United States* v. *Price,* 383 U. S. 787, 794 (1966) ("[W]illful participant in joint activity with the State or its agents" may be liable under § 1983); *Lugar* v. *Edmondson Oil Co.,* 457 U. S. 922, 931–932 (1982); and *Tower* v. *Glover,* 467 U. S. 914 (1984).

The Fourth Circuit's ruling conflicts with decisions of the Court of Appeals for the Eleventh Circuit, *Ancata* v. *Prison Health Services, Inc.,* 769 F. 2d 700 (1985), and *Ort* v. *Pinchback,* 786 F. 2d 1105 (1986), which are to the effect that a physician who contracts with the State to provide medical care to prison inmates, even if employed by a private entity, acts under color of state law for purposes of § 1983.[7] We

---

and exclusively made by the sovereign for and on behalf of the public." *Id.,* at 996, n. 2, citing *Blum* v. *Yaretsky,* 457 U. S. 991, 1012 (1982).

[7] In their resolution of § 1983 cases, other Courts of Appeals implicitly have concluded that prison physicians act under color of state law when

granted certiorari to resolve the conflict.    484 U. S. 912 (1987).

## II

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Parratt* v. *Taylor*, 451 U. S. 527, 535 (1981) (overruled in part on other grounds, *Daniels* v. *Williams*, 474 U. S. 327, 330–331 (1986)); *Flagg Bros., Inc.* v. *Brooks,* 436 U. S. 149, 155 (1978).    Petitioner West sought to fulfill the first requirement by alleging a violation of his rights secured by the Eighth Amendment under *Estelle* v. *Gamble*, 429 U. S. 97 (1976).    There the Court held that deliberate indifference to a prisoner's serious medical needs, whether by a prison doctor or a prison guard, is prohibited by the Eighth Amendment.    *Id.*, at 104–105.    The adequacy of West's allegation and the sufficiency of his showing on this element of his § 1983 cause of action are not contested here.[8]    The only issue be-

---

treating incarcerated persons.    See, *e. g.*, *Miranda* v. *Munoz*, 770 F. 2d 255 (CA1 1985) (upholding jury verdict in § 1983 action against physician under contract with State to work eight hours per week at jail); *Norris* v. *Frame*, 585 F. 2d 1183 (CA3 1978) (pretrial detainee's § 1983 claim against, among others, a prison physician); *Murrell* v. *Bennett*, 615 F. 2d 306 (CA5 1980) (reinstating inmate's § 1983 action against state prison physician); *Byrd* v. *Wilson*, 701 F. 2d 592 (CA6 1983) (reinstating § 1983 action against medical staff, including two physicians, at state penitentiary); *Duncan* v. *Duckworth*, 644 F. 2d 653 (CA7 1981) (allowing § 1983 action against prison hospital administrator to proceed until identity of responsible members of medical staff was determined); *Kelsey* v. *Ewing*, 652 F. 2d 4 (CA8 1981) (upholding § 1983 action against contract physician at state prison).

[8] In his brief and at oral argument, respondent insisted that West had failed to state a cause of action under *Estelle*.    He maintains that petitioner's allegations "amount to no more than a claim of medical malpractice" or "a negligence based claim," which, under *Estelle*, 429 U. S., at 105–106, are not sufficient to make out a claim of cruel and unusual punishment.    No court has undertaken the necessary factfinding, let alone passed upon this Eighth Amendment issue.    We decline to address it here

fore us is whether petitioner has established the second essential element—that respondent acted under color of state law in treating West's injury.

### A

The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States* v. *Classic,* 313 U. S. 299, 326 (1941). Accord, *Monroe* v. *Pape,* 365 U. S. 167, 187 (1961) (adopting *Classic* standard for purposes of § 1983) (overruled in part on other grounds, *Monell* v. *New York City Dept. of Social Services,* 436 U. S. 658, 695–701 (1978)); *Polk County* v. *Dodson,* 454 U. S. 312, 317–318 (1981); *id.,* at 329 (dissenting opinion). In *Lugar* v. *Edmondson Oil Co., supra,* the Court made clear that if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, "that conduct [is] also action under color of state law and will support a suit under § 1983." *Id.,* at 935. Accord, *Rendell-Baker* v. *Kohn,* 457 U. S. 830, 838 (1982); *United States* v. *Price,* 383 U. S., at 794, n. 7. In such circumstances, the defendant's alleged infringement of the plaintiff's federal rights is "fairly attributable to the State." *Lugar,* 457 U. S., at 937.

To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Ibid.* "[S]tate employment is generally sufficient to render the defendant a state actor." *Id.,* at 936, n. 18; see *id.,* at 937. It is firmly

---

in the first instance, particularly in light of settled doctrine that we avoid constitutional questions whenever possible. See *Spector Motor Service, Inc.* v. *McLaughlin,* 323 U. S. 101, 105 (1944); *Jean* v. *Nelson,* 472 U. S. 846, 854 (1985).

established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. See *Monroe* v. *Pape*, 365 U. S., at 172. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. See, *e. g.*, *Parratt* v. *Taylor*, 451 U. S., at 535–536; *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144, 152 (1970). See also *Flagg Bros., Inc.* v. *Brooks*, 436 U. S., at 157, n. 5.

Indeed, *Polk County* v. *Dodson*, relied upon by the Court of Appeals, is the only case in which this Court has determined that a person who is employed by the State and who is sued under § 1983 for abusing his position in the performance of his assigned tasks was not acting under color of state law. The Court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." 454 U. S., at 325. In this capacity, the Court noted, a public defender differs from the typical government employee and state actor. While performing his duties, the public defender retains all of the essential attributes of a private attorney, including, most importantly, his "professional independence," which the State is constitutionally obliged to respect. *Id.*, at 321–322. A criminal lawyer's professional and ethical obligations require him to act in a role independent of and in opposition to the State. *Id.*, at 318–319, 320. The Court accordingly concluded that when representing an indigent defendant in a state criminal proceeding, the public defender does not act under color of state law for purposes of § 1983 because he "is not acting on behalf of the State; he is the State's adversary." *Id.*, at 323, n. 13. See also *Lugar* v. *Edmondson Oil Co.*, 457 U. S., at 936, n. 18.

## B

We disagree with the Court of Appeals and respondent that *Polk County* dictates a conclusion that respondent did

not act under color of state law in providing medical treatment to petitioner. In contrast to the public defender, Doctor Atkins' professional and ethical obligation to make independent medical judgments did not set him in conflict with the State and other prison authorities. Indeed, his relationship with other prison authorities was cooperative. "Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve." *Polk County*, 454 U. S., at 320. The Manual governing prison health care in North Carolina's institutions, which Doctor Atkins was required to observe, declares: "The provision of health care is a joint effort of correctional administrators and health care providers, and can be achieved only through mutual trust and cooperation."[9] Similarly, the American Medical Association Standards for Health Services in Prisons (1979) provide that medical personnel and other prison officials are to act in "close cooperation and coordination" in a "joint effort." Preface, at i; Standard 102, and Discussion. Doctor Atkins' professional obligations certainly did not oblige him to function as "the State's adversary." *Polk County*, 454 U. S., at 323, n. 13. We thus find the proffered analogy between respondent and the public defender in *Polk County* unpersuasive.

Of course, the Court of Appeals did not perceive the adversarial role the defense lawyer plays in our criminal justice system as the decisive factor in the *Polk County* decision. The court, instead, appears to have misread *Polk County* as establishing the general principle that professionals do not act under color of state law when they act in their professional capacities. The court considered a professional not to be subject to suit under § 1983 unless he was exercising "custodial or supervisory" authority. 815 F. 2d, at 995. To the extent this Court in *Polk County* relied on the fact that the public defender is a "professional" in concluding that he

---

[9] North Carolina Division of Prisons Health Care Procedure Manual § 100.5. See App. to Brief for Petitioner 8a.

was not engaged in state action, the case turned on the particular professional obligation of the criminal defense attorney to be an adversary of the State, not on the independence and integrity generally applicable to professionals as a class. Indeed, the Court of Appeals' reading would be inconsistent with cases, decided before and since *Polk County*, in which this Court either has identified professionals as state actors, see, *e. g.*, *Tower* v. *Glover*, 467 U. S. 914 (1984) (state public defenders), or has assumed that professionals are state actors in § 1983 suits, see, *e. g.*, *Estelle* v. *Gamble*, 429 U. S. 97 (1976) (medical director of state prison who was also the treating physician). See also *Youngberg* v. *Romeo*, 457 U. S. 307, 322–323, and n. 30 (1982) (establishing standards to determine whether decisions of "professional" regarding treatment of involuntarily committed can create liability for a due process violation). Defendants are not removed from the purview of § 1983 simply because they are professionals acting in accordance with professional discretion and judgment.[10]

---

[10] We do not suggest that this factor is entirely irrelevant to the state-action inquiry. Where the issue is whether a *private* party is engaged in activity that constitutes state action, it may be relevant that the challenged activity turned on judgments controlled by professional standards, where those standards are not established by the State. The Court has held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum* v. *Yaretsky*, 457 U. S., at 1004 (decisions of physicians and administrators of privately owned and operated nursing home to transfer Medicaid patients not state action); *Rendell-Baker* v. *Kohn*, 457 U. S. 830, 840 (1982) (discharge decisions of privately owned and operated school not state action). In both *Blum* and *Rendell-Baker*, the fact that the private entities received state funding and were subject to state regulation did not, without more, convert their conduct into state action. See *Blum* v. *Yaretsky*, 457 U. S., at 1004; *Rendell-Baker* v. *Kohn*, 457 U. S., at 840–843. The Court suggested that the private party's challenged decisions could satisfy the state-action requirement if they were made on the basis of some rule of decision for which the State is responsible. The Court found, however, that the decisions were based on independent pro-

The Court of Appeals' approach to determining who is subject to suit under § 1983, wholeheartedly embraced by respondent, cannot be reconciled with this Court's decision in *Estelle*, which demonstrates that custodial and supervisory functions are irrelevant to an assessment whether the particular action challenged was performed under color of state law. In *Estelle*, the inmate's Eighth Amendment claim was brought against the physician-employee, Dr. Gray, in his capacity both as treating physician and as medical director of the state prison system. See 429 U. S., at 107. Gray was sued, however, solely on the basis of allegedly substandard medical treatment given to the plaintiff; his supervisory and custodial functions were not at issue. The Court's opinion did not suggest that Gray had not acted under color of state law in treating the inmate.[11] To the contrary, the infer-

fessional judgments and were not subject to state direction. Thus, the requisite "nexus" to the State was absent.

This determination cannot be transformed into the proposition that no person acts under color of state law where he is exercising independent professional judgment. "[T]he exercise of . . . independent professional judgment," is not, as the Court of Appeals suggested, "the primary test." 815 F. 2d, at 995, n. 1. And *Blum* and *Rendell-Baker* provide no support for respondent's argument that a physician, employed by the State to fulfill the State's constitutional obligations, does not act under color of state law merely because he renders medical care in accordance with professional obligations.

[11] The Court of Appeals, in our view, misunderstood this Court's *Polk County* discussion of *O'Connor* v. *Donaldson*, 422 U. S. 563 (1975), and *Estelle* v. *Gamble*, 429 U. S. 97 (1976). We observed that *O'Connor* involved claims against a psychiatrist who served as the superintendent at a state mental hospital, and that *Estelle* involved a physician who was the medical director of the Texas Department of Corrections and the chief medical officer of a prison hospital. *Polk County,* 454 U. S., at 320. The Court made these observations, however, in the context of contrasting the role of the public defender with that of the physicians in response to the argument that state employment alone is sufficient to fulfill the under-color-of-state-law requirement. See *id.,* at 319–320. We agree with the dissent in the Court of Appeals that the Court discussed these facts "in order to highlight the cooperative relationship between the doctors and the

ence to be drawn from *Estelle* is that the medical treatment of prison inmates by prison physicians is state action. The Court explicitly held that "indifference . . . manifested by prison doctors in their response to the prisoner's needs . . . states a cause of action under § 1983." *Id.*, at 104–105; see *id.*, at 104, n. 10 (citing with approval Courts of Appeals' decisions holding prison doctors liable for Eighth Amendment claims brought under § 1983 without mention of supervisory and custodial duties). The Court of Appeals' rationale would sharply undermine this holding.[12]

## C

We now make explicit what was implicit in our holding in *Estelle:* Respondent, as a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury. Such conduct is fairly attributable to the State.

The Court recognized in *Estelle:* "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." 429 U. S., at 103. In light of this, the Court held that the State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Id.*, at 104. See also *Spicer* v. *Williamson*, 191 N. C. 487, 490, 132 S. E. 291, 293 (1926) (common law requires

state and thus the absence of an adversarial relationship akin to that existing between public defenders and the state." 815 F. 2d, at 997–998. See *Polk County*, 454 U. S., at 320 ("Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve"). Nothing in the Court's opinion stands for the proposition that a prison physician must be acting in a custodial or supervisory function in order to act under color of state law.

[12] Furthermore, it would greatly diminish the meaning of a prisoner's Eighth Amendment right, since few of those with supervisory and custodial functions are likely to be involved directly in patient care. And § 1983 liability is not available under the doctrine of *respondeat superior*. *Monell* v. *New York City Dept. of Social Services*, 436 U. S. 658, 690–695 (1978).

North Carolina to provide medical care to its prison inmates), cited in *Estelle,* 429 U. S., at 104, n. 9.   North Carolina employs physicians, such as respondent, and defers to their professional judgment, in order to fulfill this obligation.   By virtue of this relationship, effected by state law, Doctor Atkins is authorized and obliged to treat prison inmates, such as West.[13]   He does so "clothed with the authority of state law." *United States* v. *Classic,* 313 U. S., at 326.   He is "a person who may fairly be said to be a state actor." *Lugar* v. *Edmondson Oil Co.,* 457 U. S., at 937.   It is only those physicians authorized by the State to whom the inmate may turn. Under state law, the only medical care West could receive for his injury was that provided by the State.   If Doctor Atkins misused his power by demonstrating deliberate indifference to West's serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish West by incarceration and to deny him a venue independent of the State to obtain needed medical care.

The fact that the State employed respondent pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other "state employees" does not alter the analysis.   It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be at-

---

[13] By statute, the North Carolina Department of Correction is required to provide health services to its prisoners.   N. C. Gen. Stat. § 148–19 (1987).   In compliance with the statute, state regulations charge the Director, Division of Prisons, with the responsibility of providing each prisoner the services necessary to maintain basic health.   5 N. C. Admin. Code § 02E.0201 (1987).   State regulations provide that the delivery of health services at each facility is the responsibility of the prison administrator, who must designate a specific health authority "who is charged with the responsibility to provide health services to that facility."   § 02E.0202. Pursuant to these provisions, Doctor Atkins was employed by the Director, Division of Prisons, and was paid by the State, to provide orthopedic services to the State's prisoners.

tributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.[14] The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

Nor does the fact that Doctor Atkins' employment contract did not require him to work exclusively for the prison make him any less a state actor than if he performed those duties as a full-time, permanent member of the state prison medical staff. It is the physician's function while working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law.[15] In the State's employ, respondent

---

[14] As the dissent in the Court of Appeals explained, if this were the basis for delimiting § 1983 liability, "the state will be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied." 815 F. 2d, at 998.

[15] Contrary to respondent's intimations, the fact that a state employee's role parallels one in the private sector is not, by itself, reason to conclude that the former is not acting under color of state law in performing his duties. "If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity . . . ." *Griffin* v. *Maryland,* 378 U. S. 130, 135 (1964).

Moreover, although the provision of medical services is a function traditionally performed by private individuals, the context in which respondent performs these services for the State (quite apart from the source of remuneration) distinguishes the relationship between respondent and West from the ordinary physician-patient relationship. Cf. *Polk County,* 454

worked as a physician at the prison hospital fully vested with state authority to fulfill essential aspects of the duty, placed on the State by the Eighth Amendment and state law, to provide essential medical care to those the State had incarcerated. Doctor Atkins must be considered to be a state actor.

## III

For the reasons stated above, we conclude that respondent's delivery of medical treatment to West was state action fairly attributable to the State, and that respondent therefore acted under color of state law for purposes of § 1983. Accordingly, we reverse the judgment of the Court of Ap-

U. S., at 318.   Respondent carried out his duties at the state prison within the prison hospital.   That correctional setting, specifically designed to be removed from the community, inevitably affects the exercise of professional judgment.   Unlike the situation confronting free patients, the non-medical functions of prison life inevitably influence the nature, timing, and form of medical care provided to inmates such as West.   By regulation, matters of medical health involving clinical judgment are the prison physician's "sole province."   5 N. C. Admin. Code § 02E.0204 (1987).   These same regulations, however, require respondent to provide medical services "in keeping with the security regulations of the facility." *Ibid.*   The record is undeveloped as to the specific limitations placed on respondent by the state prison system.   But studies of prison health care, and simple common sense, suggest that his delivery of medical care was not unaffected by the fact that the State controlled the circumstances and sources of a prisoner's medical treatment.   For one thing, the State's financial resources are limited.   Further, prisons and jails are inherently coercive institutions that for security reasons must exercise nearly total control over their residents' lives and the activities within their confines; general schedules strictly regulate work, exercise, and diet.   These factors can, and most often do, have a significant impact on the provision of medical services in prisons.   See generally Neisser, Is There a Doctor in the Joint? The Search for Constitutional Standards for Prison Health Care, 63 Va. L. Rev. 921, 936–946 (1977) (describing the institutional effects on the delivery of health care services in prisons); M. Wishart & N. Dubler, Health Care in Prisons, Jails and Detention Centers: Some Legal and Ethical Dilemmas 4 (1983) ("[T]he delivery of medical services in the nation's prisons and jails is beset with problems and conflicts which are virtually unknown to other health care services").

peals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I agree with the opinion of the Court that respondent acted under color of state law for purposes of § 1983.   I do not believe that a doctor who lacks supervisory or other penological duties can inflict "punishment" within the meaning of that term in the Eighth Amendment.   Cf. *Johnson* v. *Glick,* 481 F. 2d 1028, 1031–1032 (CA2) (Friendly, J.), cert. denied *sub nom. John* v. *Johnson,* 414 U. S. 1033 (1973).   I am also of the view, however, that a physician who acts on behalf of the State to provide needed medical attention to a person involuntarily in state custody (in prison or elsewhere) and prevented from otherwise obtaining it, and who causes physical harm to such a person by deliberate indifference, violates the Fourteenth Amendment's protection against the deprivation of liberty without due process.   See *Youngberg* v. *Romeo,* 457 U. S. 307, 315, 324 (1982) (dictum); see generally *Daniels* v. *Williams,* 474 U. S. 327, 331 (1986); *Ingraham* v. *Wright,* 430 U. S. 651, 672–674, and n. 41 (1977); *Rochin* v. *California,* 342 U. S. 165, 169–174 (1952); *Johnson, supra,* at 1032–1033.   I note that petitioner's *pro se* complaint merely claimed violation of his rights, and it is the courts that have specified which constitutional provision confers those rights.