77 F.3d 483
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hosea WILLIS, Plaintiff-Appellant,
v.
U.S. CORRECTIONS CORP. and Grace Smith, individually and in
her official capacity, Defendants-Appellees.
 No. 94-6171.
 United States Court of Appeals, Sixth Circuit.
 Feb. 12, 1996.
 
 On Appeal from the United States District Court for the Western District of Kentucky, No. 93-00589; Charles R. Simpson, III, Chief Judge.
 W.D.Ky.
 AFFIRMED IN PART, REVERSED IN PART, REMANDED.
 Before: WELLFORD, NELSON and SUHRHEINRICH, Circuit Judges.
 Judge NELSON announced the judgment of the court and delivered an opinion in which Judges WELLFORD and SUHRHEINRICH concur except as to Part IV B. Judge SUHRHEINRICH delivered an opinion for the court with respect to Part IV B, Judge WELLFORD concurring. Part IV B of Judge NELSON'S opinion represents a dissent.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a civil rights case brought in federal court by a person who had been sentenced by a state court to 30 days in jail. After the plaintiff had served part of his sentence, the state court ordered that he be released periodically for treatment by his chiropractor. The order was not honored, either because it never reached the private company that operated the jail or because the company lost it. The failure to honor the order led to this lawsuit.
 
 
 2
 On appeal from a summary judgment against him, the plaintiff contends that the district court erred (a) in its disposition of claims asserted under the Fourth and Eighth Amendments to the United States Constitution and (b) in its dismissal of pendant state law claims with prejudice. This court will affirm the disposition of the federal constitutional issues but will remand the case with instructions either to dismiss the pendant state law claims without prejudice or to decide them on the merits.
 
 
 3
 * The plaintiff, Hosea Willis, had an automobile accident on September 8, 1992. He sustained a cut over his eye, and he contends that he suffered injuries to his back, shoulders and neck. Taken to a hospital, he was released two hours later following treatment of the cut. He did not say anything to the hospital staff about having injured his back or neck, and he did not receive any medications or prescriptions of any kind. The hospital did not advise him to seek further medical care.
 
 
 4
 Some ten days after the accident Mr. Willis went to a chiropractor because he was experiencing pain and "couldn't hardly walk," as he testified at his deposition. The chiropractor made a diagnosis of "acute traumatic cervical and lumbar sprain with ... [subluxation of C2, C6, and L5] and sacro iliac dysfunction."
 
 
 5
 Mr. Willis was prosecuted in a Kentucky court on charges arising out of the accident. Convicted of driving under the influence of alcohol, he was ordered to serve a 30-day sentence in a jail administered by the Jefferson County Metropolitan Department of Corrections. The commitment order--entered on October 23, 1992--incorporated a separate order allowing him to be released from jail six days a week so that he could work at his job with a nursing service.
 
 
 6
 Mr. Willis was booked into the main Jefferson County jail on October 27, 1992. A health screening form prepared at that time indicates that he had no injuries prior to incarceration. At the end of the form Mr. Willis signed a statement acknowledging that he had been told how to go about receiving medical service while incarcerated.
 
 
 7
 On October 28, 1992, Mr. Willis was placed in the River City Correctional Center, a satellite facility operated by U.S. Corrections Corp. under contract with Jefferson County. A River City intake form prepared at the time of his admission to the facility indicates that Mr. Willis was receiving therapy from Dr. E. Allen, the chiropractor referred to above. A staff note prepared on the same day indicates that Mr. Willis was on "inactive employment" status at the nursing service because of an injury. The nursing service would not let him work without a medical release form, according to the note. This is evidently why Mr. Willis did not participate in the work release program.
 
 
 8
 On October 29, 1992, Mr. Willis submitted a written "action request" to the River City staff. The request stated that he needed to see a doctor and asked "if my doctor relief papers have got here for court orders." In a written reply, the River City grievance counselor stated--accurately--"There is no Court order here for a medical release."
 
 
 9
 On the same day that he asked for a doctor, Mr. Willis was seen by E. Lucas, M.D., one of two doctors who visited prisoners at River City. Dr. Lucas noted on a River City form that Mr. Willis had been going to a chiropractor three times a week for multiple complaints, including neck and shoulder pain, and wanted to return to the chiropractor for his regular appointments. Upon examination Dr. Lucas found that Mr. Willis moved his upper extremities well. Concluding that Mr. Willis had sustained a "musculoskeletal strain," Dr. Lucas prescribed up to 800 mg. of Motrin per day, as needed, for pain. According to Mr. Willis' deposition testimony both Dr. Lucas and a nurse to whom Mr. Willis talked said that he could not see his own doctor (the chiropractor) without a court-ordered release.
 
 
 10
 In an action request dated October 30, 1992, Mr. Willis reiterated his request for "medical care relief" and stated that his doctor had written orders for him to have such relief. The grievance counselor again replied that there was no court order at River City for a medical release.
 
 
 11
 In a supplemental order entered on November 6, 1992, the sentencing court granted Mr. Willis the relief he had been seeking. The supplemental order said that "Mr. Willis is specifically allowed a release to see Dr. Earl F. Allen for his regularly scheduled Monday, Wednesday and Friday treatments...." The order also granted Mr. Willis a one-day furlough to attend his son's wedding on November 7, 1992.
 
 
 12
 The Jefferson County corrections department received the supplemental order on the afternoon of November 6, an investigation by the department subsequently disclosed. The report of the investigation indicates that a corrections officer named Belle Stover placed a copy of the supplemental order in an interoffice mailbox for delivery to River City Center by a transportation officer.
 
 
 13
 Beverly Heiney, the U.S. Corrections employee who ran the River City facility, testified at her deposition that the supplemental order never made it into the file maintained on Mr. Willis at River City. This may or may not suggest that U.S. Corrections did not receive the order; several River City forms that should have been in the prisoner's file, including the two action requests referred to above, were not found there either.
 
 
 14
 It is clear, in any event, that staff personnel at River City were informed of the furlough portion of the supplemental order by telephone on the morning of November 7. The telephone call was followed by a computer-generated "temporary release" in which Jefferson County authorized the River City facility to give Mr. Willis a one-day furlough. Mr. Willis was thereupon signed out to attend his son's wedding.
 
 
 15
 Two days after the wedding Mr. Willis submitted another action request, asking "if my medical relief from court has come here." A U.S. Corrections employee replied, in writing, "No, it has not." The next day, November 10, 1992, Mr. Willis again asked if the medical release had come over from the court so he could go to his chiropractor. The same employee responded, "No, we have not received any new paperwork on you." It does not appear that anyone from River City ever called the corrections department to ask about a court order, and Mr. Willis was kept in the facility without seeing his chiropractor until he was released for good on November 25, 1992.
 
 II
 
 16
 Mr. Willis consulted counsel, and in July of 1993 his lawyer sent the corrections department a letter threatening suit if a "fully compensatory settlement offer" were not forthcoming by the end of August. On August 25, 1993, the lawyer obtained a letter from the chiropractor expressing the opinion that Mr. Willis' failure to receive chiropractic treatments in November of 1992 had "caused this patient to suffer with pain in cervical and lumbar area, slowed the healing process and correction of subluxations of the spine."
 
 
 17
 In September of 1993 Mr. Willis filed his lawsuit in the United States District Court for the Western District of Kentucky. Named as defendants were U.S. Corrections Corporation and Carlos Cintron, who at one time had been director of operations at Jefferson County's main jail. It subsequently developed that in 1990 Mr. Cintron had been replaced in that position by Grace Smith. In an agreed order, the court substituted Ms. Smith for Mr. Cintron. Ms. Smith was sued in both her individual and official capacities.
 
 
 18
 In his complaint, which was not verified under oath, Mr. Willis alleged among other things that he had been assigned to the fifth floor at River City, requiring him to climb and descend flights of stairs repeatedly; that he had been assigned janitorial duties inconsistent with the healing of a back sprain; and that these conditions, coupled with a lack of chiropractic treatment, had added to his pain and slowed his healing. The complaint set forth federal constitutional claims under the Eighth Amendment (deliberate indifference to serious medical needs, resulting in physical and mental injury) and Fourth Amendment (unreasonable seizure by failing to release the prisoner from jail on Mondays, Wednesdays, and Fridays in accordance with the sentencing court's supplemental order). The complaint also set forth corresponding claims under Kentucky law, plus pendant state law claims for negligence.
 
 
 19
 The defendants moved for summary judgment in February of 1994, and Mr. Willis filed a responsive brief in April. Several depositions had been taken by that time, including the deposition of defendant Grace Smith. In August of 1994 the district court filed a written opinion concluding that the record of the case did not reveal any deliberate indifference to serious medical needs; that if the incarceration of Mr. Willis constituted a "seizure" in Fourth Amendment terms, the seizure was reasonable as a matter of law; and that under United Mine Workers v. Gibbs, 383 U.S. 715 (1966), the pendant state law claims would not be addressed. By a separate judgment order the action was dismissed with prejudice. Mr. Willis promptly filed a notice of appeal.
 
 III
 
 20
 It is clear that defendant U.S. Corrections Corporation, as a private entity under contract with an agency of the state to perform a traditional state function, is subject to suit under 42 U.S.C. § 1983 as one acting "under color of state law." West v. Atkins, 487 U.S. 42, 54 (1988); Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir.1993).
 
 
 21
 It is equally clear that where an Eighth Amendment claim of cruel and unusual punishment is predicated upon deliberate indifference to a prisoner's serious medical needs, see Estelle v. Gamble, 429 U.S. 97 (1976), liability cannot be predicated upon mere negligence; the defendant's conduct "must demonstrate deliberateness tantamount to intent to punish." Horn by Parks v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir.), cert. denied, 115 S.Ct. 199 (1994); Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir.1988), cert. denied, 489 U.S. 1068 (1989).
 
 
 22
 Upon de novo review of the record of the case at bar--a record that we find lacking in substantiation for some of the factual allegations of the unverified complaint--we are satisfied that the plaintiff came nowhere close to demonstrating that a jury could properly be permitted to find either of the defendants guilty of deliberate indifference tantamount to an intent to "punish" the plaintiff.
 
 
 23
 The very first time that Mr. Willis told an employee of defendant U.S. Corrections that he was sick and needed to see a doctor, that defendant promptly arranged to have Mr. Willis seen by a qualified doctor of medicine. The doctor examined him, as the record shows without contradiction, and prescribed Motrin for the pain he was experiencing. U.S. Corrections gave him Motrin, just as the doctor had directed. Perhaps chiropractic treatments would have made Mr. Willis feel better, but no reasonable jury could possibly find anything in this case tantamount to a deliberate intent to punish Mr. Willis by denying him treatment.
 
 IV
 
 24
 As to the claim that Mr. Willis was deprived of his Fourth Amendment rights by being kept in jail in violation of the sentencing court's supplemental order of November 6, 1992, we have searched the record in vain for evidence on which a jury could properly be permitted to find a breach of any legal duty on the part of defendant Grace Smith. The plaintiff's appellate brief acknowledges that one of defendant Smith's subordinates placed a copy of the supplemental order in the River City mailbox, and the brief further acknowledges that "Jefferson County routinely hand-delivers all documents in the River City mailbox." There has been no showing that defendant Smith could properly be held responsible if the courier somehow lost the supplemental order en route to River City, just as there has been no showing that defendant Smith was responsible for verifying timely delivery of each piece of paper placed in the mailbox.
 
 B
 
 25
 As far as defendant U.S. Corrections is concerned, it seems to the author of this opinion--but not to the other members of the panel--that there are genuine issues of material fact not capable of resolution on a motion for summary judgment. Whether or not U.S. Corrections ever received the supplemental order directing that Mr. Willis be released to go to the chiropractor, the company clearly knew that Mr. Willis was expecting such an order. Was it reasonable, under the facts presented, for U.S. Corrections not to telephone Grace Smith and ask her about the release order? This is a question of fact, in my view, not a question of law.
 
 
 26
 It is true that "[a jailer's] duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained." Whirl v. Kern, 407 F.2d 781, 792 (5th Cir.1968), cert. denied, 396 U.S. 901 (1969). A jailer who fails to comply with a court order directing the release of a prisoner does not commit "an instant [constitutional] tort at the moment when his prisoner should have been released." Id. But the point at which a jailer's failure to comply with a release order ripens into a constitutional tort turns on questions of reasonableness--and on the facts of this case, I believe that a jury could properly be allowed to find that the conduct of defendant U.S. Corrections was not reasonable.
 
 V
 
 27
 Under United Mine Workers v. Gibbs, as the defendants correctly observe in their appellate brief, the district court had discretion to decline to address pendant state law claims. But unless the district court was prepared to address the pendant claims on their merits--which it certainly could have done, and will be free to do on remand, if it wishes--the claims should obviously have been dismissed without prejudice. The defendants have presented no justification for both declining to address the pendant claims and dismissing them with prejudice. We cannot see any justification for this either.
 
 
 28
 The judgment is AFFIRMED as to the federal constitutional claims and REVERSED as to the pendant state law claims. The case is REMANDED to the district court with instructions to address the state law claims on the merits or dismiss them without prejudice.
 
 
 29
 SUHRHEINRICH and WELLFORD, Circuit Judges, concurring.
 
 
 30
 We concur with Judge Nelson's opinion in Parts I, II, III, IV A, and V. We deliver the opinion of the court as to Part IV B concerning defendant U.S. Corrections.
 
 
 31
 Willis argues that the supplemental order amended his thirty day sentence to require him to be released for specific periods during the thirty days. Therefore, he asserts, U.S. Corrections' refusal to release him during the designated periods constituted an unreasonable seizure in violation of the Fourth Amendment. We disagree. The only part of the supplemental order not carried out dealt with Willis' release for the specific purpose of undergoing his chiropractic treatments. The supplemental order did not dictate that his incarceration was only valid during certain periods. Willis was at all times lawfully incarcerated pursuant to a valid thirty day sentence, and his confinement was therefore not an unreasonable seizure. U.S. Corrections may have committed an administrative error, but the error did not amount to a deprivation of Willis' Fourth Amendment rights. Therefore, the district court properly dismissed Willis' Fourth Amendment claim against U.S. Corrections.