Jane DOE, Plaintiffs,

v.

Joan HARRISON, M.D., personally, Alexander Deutch, M.D., personally, Rose Yu–Chin, M.D., personally, Ellen B. Tabor, M.D., personally, Barara Lubrano, M.D., personally, Aaron Bogad, personally, Norberto Torres, per-

sonally, Cabrini Medical Center, and Arthur Weiss, M.D., Defendants.

No. 01 Civ. 12741(SHS).

United States District Court, S.D. New York.

March 24, 2003.

**340**

William M. Brooks, Huntington, NY, for Plaintiffs.

Peter T. Shapiro, Jones, Hirsch, Connors & Bull, P.C., Bruce M. Brady, Callan, Koster, Brady & Brennan, L.L.P., Michael J. Laub, Gordon & Silber, P.C., Bhalinder Lal Rikhye, Peltz & Walker, New York City, for Defendants.

## OPINION

STEIN, District Judge.

The pseudonymous Jane Doe brings this action against a private hospital and medical personnel who hospitalized her against her will for 12 days. Plaintiff alleges this erroneous involuntary hospitalization violated her constitutional right to due process and brings claims pursuant to 42 U.S.C. § 1983. Plaintiff also brings state constitutional and common-law claims of false imprisonment, assault and battery and trespass. Defendants have moved to dismiss this action on the grounds that Doe has failed to allege the state action required to sustain a section 1983 claim, and request that the Court decline to exercise its supplemental jurisdiction over the state claims. This Court agrees, and defendants' motion to dismiss the complaint is granted.

## I. BACKGROUND

### A. Statutory Background

Pursuant to New York's Mental Hygiene Law, a patient may be involuntarily committed to a psychiatric hospital on an emergency basis for a period of up to 15 days if the director of the hospital upon examination finds that she has a "mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to [herself] or others." N.Y. Mental Hygiene Law § 9.39. A patient admitted pursuant to section 9.39 can only be retained for more than forty-eight hours if the director's finding "is confirmed after examination by another physician who shall be a member of the psychiatric staff of the hospital." *Id.*

A patient may be involuntarily committed to a psychiatric facility on a non-emergency basis if she is (1) in need of inpatient care that is "essential to [her] welfare," (2) "unable to understand the need for such care and treatment," and (3) poses "a substantial risk of physical harm" to herself or others. *Id.* §§ 9.01, 9.27. The patient can be admitted for treatment "upon the certificates of two examining physicians, accompanied by an application for admission." *Id.* § 9.27. The application for admission, which must be executed within ten days prior to admission, can be submitted by, among others, "the director of the hospital ... in which the patient is hospitalized," or "a qualified psychiatrist who is ... treating such person for a mental illness in a facility licensed or operated by the [New York] office of mental health." *Id.* § 9.27(b)(6)(11). The director of the hospital cannot admit the patient until a third physician who is member of the hospital staff confirms that the patient satisfies the criteria for hospitalization. *Id.* § 9.27(e). A patient has the right to contest her involuntary confinement through a court hearing scheduled within five days from the date notice of the request is received by the court. *Id.* § 9.31.

### B. Plaintiff's Involuntary Commitment in Cabrini Medical Center

The following facts are as alleged in the Second Amended Complaint ("Com-

plaint"): Jane Doe, who had no prior history of mental illness, was involuntarily confined as a patient at Cabrini Medical Center from April 25, 2001 until her release pursuant to court order 12 days later. (Compl.¶ 1) Cabrini is a private hospital licensed by the New York State Office of Mental Health to provide psychiatric services. (*Id.* ¶ 8). Defendants Joan Harrison, M.D., Rose Yu–Chin, M.D., Barbara Lubrano, M.D., Alexander Deutsch, M.D., and Ellan B. Tabor, M.D. ("Cabrini Doctors") are physicians employed at Cabrini whose decisions led to Ms. Doe's civil commitment (*Id.* ¶¶ 2–9).

On the night of April 25, 2001, plaintiff, a graduate of Harvard Law School and an attorney at a New York law firm who had been operating under a great deal of stress and on very little sleep, began to experience heart palpitations while at home. (*Id.* ¶¶ 28–32). Doe, "fearful for her health," telephoned the New York City Emergency Medical Services ("EMS"), a New York state program that provides emergency medical services by dispatching participating public and private medical service providers to residents upon request. (*Id.* ¶¶ 33–36). Upon receiving Doe's telephone call, the EMS dispatcher contacted Cabrini, which sent two of its employees, ambulance workers Aaron Bogad and Norberto Torres to Doe's apartment. (*Id.* ¶¶ 9–10, 37–38). After speaking with Doe, the ambulance workers "determined that plaintiff's problem was psychiatric in nature and that it required evaluation"; therefore, they transported her to Cabrini. (*Id.* ¶ 42–44,47). Doe was then "required to wait for a long period of time in the emergency room," was "physically prevented ... from leaving the hospital" and upon the authorization of Dr. Lubrano, forcibly given psychotropic medication. (*Id.* ¶¶ 48–57).

Doe was finally evaluated at 7:05 am the next morning by Dr. Harrison, who determined that she was a danger to herself, and certified Doe for involuntary hospitalization on an emergency basis pursuant to section 9.39 of the Mental Hygiene Law. (*Id.* ¶¶ 64–68). On April 27, Dr. Yu–Chin evaluated Doe and confirmed Dr. Harrison's finding to extend Doe's emergency confinement past the initial forty-eight hours. (Id.¶¶ 75–82) The next day, Dr. Tabor submitted an application for the ongoing commitment of Doe on a non-emergency basis pursuant to section 9.27 of the Mental Hygiene Law. (*Id.* ¶ 83–87). Dr. Harrison approved of this determination that plaintiff required in-patient care. (*Id.* ¶ 92). Drs. Yu–Chin and Deutsch certified Doe's need for hospitalization, thereby executing the non-emergency commitment application. (*Id.* ¶¶ 88–91). At some point during her confinement, "plaintiff requested a court hearing to challenge her confinement pursuant to Mental Hygiene Law § 9.31." At that hearing, held on May 8, 2001, Justice William McCooe of Supreme Court, New York County, held that Doe "did not satisfy the criteria for involuntary hospitalization", and directed Cabrini to release her. (*Id.* ¶¶ 99–101).

## II. DISCUSSION

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000). The court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally. *See id.*

 Section 1983 of Title 42 of the United States Code provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State, ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured ...

In order to state a claim pursuant to this provision, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwares v. City of New York,* 985 F.2d 94,98 (2d Cir.1993).

■ It is undisputed that involuntary confinement, also known as civil commitment, constitutes a significant deprivation of liberty requiring due process protection. *See Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). The critical issue therefore, is whether plaintiff has properly alleged that defendants were state actors when they involuntarily committed her. A private party's conduct has been recognized as constituting state action where the action is (a) the result of state compulsion, (b) a public function, or (c) a "joint" action as a result of a close nexus between public and private actors. *Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The United States Court of Appeals for the Second Circuit has held that under all three of these tests, involuntary commitment by a private party pursuant to state statute does not convert private conduct into state action for purposes of section 1983. *See Okunieff v. Rosenberg,* 166 F.3d 507 (2d Cir.1999). As neither the United States Supreme Court precedent cited by Doe nor the specific allegations of this case bring this matter outside the ambit of *Okunieff,* there is no proper allegation of state action in the present case.

### A. Civil Commitment By Private Physicians

#### 1. The "State Compulsion" Test is Not Met

■ Civil commitment by a private physician pursuant to the Mental Hygiene Law does not establish state action through state compulsion. *Okunieff v. Rosenberg,* 996 F.Supp. 343, 348 (S.D.N.Y. 1998), *aff'd* 166 F.3d 507 (2d Cir.1999). Under the state compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or provided such significant encouragement, overt or covert, that the choice must in law be deemed to be that of the State." *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777. The Mental Hygiene Law does not mandate involuntary commitment, but rather establishes the mechanism by which physicians, exercising their professional judgment, effect involuntary commitment. Indisputably, it leaves the decision of whether or not to commit an individual "completely to the physician's discretion." *Okunieff,* 996 F.Supp. at 350, *aff'd* 166 F.3d at 508; N.Y. Mental Hygiene Law §§ 9.27(a) ("director of a hospital *may* receive and retain therein as a patient ..." (emphasis added)), 9.39 ("director [of hospital] ... *may* receive and retain therein as a patient ..." (emphasis added)). State action through state compulsion requires actual coercion by a state actor that impacts upon the private physician's decision-making. *See Ruhlmann v. Ulster County Department of Social Services,* 234 F.Supp.2d 140, 161 (N.D.N.Y. 2002) (denying motion for summary judgment when there were genuine issues of material fact as to whether state officials compelled the private actors to take action). Because there are no allegations that the state coerced the defendants to commit Doe, the state compulsion test is not satisfied.

## 2. The "Public Function" Test is Not Met

 Civil commitment by a private physician is also not a "public function" that constitutes state action when performed by a private actor. *See Okunieff,* 996 F.Supp. at 353, *aff'd* 166 F.3d at 508. Under the public function test, state action occurs when a private actor performs a function that is "traditionally the exclusive prerogative of the State." *Blum,* 457 U.S. at 1011, 102 S.Ct. 2777. The public function test as applied is quite stringent and under the doctrine "an extraordinarily low number of . . . functions' have been held to be . . . 'public'." *Ruhlmann,* 234 F.Supp.2d at 166. The district court in *Okunieff,* after an extensive review of the historical record of involuntary confinement in New York State, determined that the activity had traditionally been a private remedy, and the Second Circuit agreed with the district court's reasoning. *Okunieff,* 996 F.Supp. 343 at 355–56, *aff'd* 166 F.3d at 508. This Court agrees that civil commitment does not satisfy the stringent requirements necessary to be a "public function" that converts private action into state action for purposes of section 1983 actions.

## 3. The "Close Nexus" Test is Not Met

 Finally, civil commitment by a private physician does not constitute state action under the close nexus test. *See id.* at 352–53. That requires Doe to demonstrate "a sufficiently close nexus between the State and the challenged action of the [private] regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777 (holding no state action despite extensive state regulation and funding of private nursing homes). The purpose of the close nexus requirement is to "assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Id.* Because the Mental Hygiene Law merely authorizes private physicians and hospitals to commit involuntary commitments yet leaves the decision of whether or not to commit to the professional discretion of the physicians, New York's relationship with private hospitals is not so close that it passes the close nexus test. *See Okunieff,* 996 F.Supp. at 352–53 *aff'd* 166 F.3d at 508.

Doe contends that the Supreme Court's decision in *Brentwood Academy v. Tenn. School Athletic Ass'n,* 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) casts this analysis into doubt. In *Brentwood,* the Supreme Court held that a private interscholastic athletic regulatory body engaged in state action when it enforced a rule against a member school; the decision is simply a straightforward application of the close nexus test. The association at issue in *Brentwood Academy* primarily regulated public schools, and was administered primarily by public officials. *See id.* at 291–92, 121 S.Ct. 924. In that factual context, the Supreme Court determined that the nominally private character of the association was "overborne by the pervasive entwinement of public institutions and public officials in its composition and workings." *Id.* at 298, 121 S.Ct. 924. Doe then cites to the Ninth Circuit's decision in *Jensen v. Lane County,* 222 F.3d 570 (9th Cir.2000), which found state action in a civil commitment case applying the close nexus test, to argue that *Brentwood Academy* when applied to the civil commitment cases limits the applicability of the holding in *Okunieff.*

Doe's argument fails because both *Brentwood Academy* and *Jensen* are clearly distinguishable from the present case. Unlike *Brentwood Academy,* Doe makes no allegation that Cabrini Medical Center is composed of · public officials, nor that

public officials direct the hospital's day-to-day workings of the hospital. Nor does plaintiff allege, as in *Jensen,* that the commitment decision of the private, contract physician was made as a result of an evaluation process that was initiated by state mental health employees and that involved consultation with state mental health officials.[1] *See Jensen,* 222 F.3d at 575. Rather, Doe contends that Cabrini should be considered a state actor because of the role it plays in New York's combined public-private system of psychiatric care, and the interaction between state and private actors in that system.

Doe asserts state action should be found because as a result of New York's mental health system, private hospitals such as Cabrini have "assumed the State's civil commitment responsibility." (Plt. Mem. at 15). Plaintiff then seeks support in *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), for the principle that citizens cannot be deprived of a means to vindicate their constitutional rights by the State's contracting out public obligations to private actors. *See West,* 487 U.S. at 56, 108 S.Ct. 2250 (1988) (holding state action satisfied where prisoner alleged civil rights injury by private physician working under contract at state prison hospital). Thus, plaintiff contends, civil commitment by New York's private hospitals is an analogous contracting out of public obligations that must be considered state action. This argument, however, is merely a reformulation of the public function argument rejected in *Okunieff. See Okunieff,* 996 F.Supp. at 355, *aff'd* 166 F.3d at 508. *West* involved the provision of medical care to a prisoner—a traditional function of the State. In contrast, the privatization of an activity such as civil commitment that is not a "public function," does not mandate an analogous constitutional scrutiny of private actors performing the activity.

### B. The Involvement of EMS in Doe's Civil Commitment.

■ Doe contends alternatively that the involvement of New York City's Emergency Medical Services converted her civil commitment by private actors into state action. She makes this argument in a two-step process: (1) that there was such a close nexus between the state dispatchers and the private ambulance personnel that they should be considered state actors; and (2) that the subsequent consultation of these ambulance personnel with the physicians who civilly committed Doe therefore properly established the physician defendants as state actors as well.

Doe's argument, however, merely takes the formal language of *Brentwood Academy* and other close nexus tests and misapplies it to a radically different context. The "untwining" of public and private actors in New York's system of emergency medical care has nothing to do with the challenged action in question at this case—Doe's civil commitment by Cabrini. The sole role played by the EMS dispatcher in the events leading to Doe's commitment was to contact Cabrini in response to Doe's call. (Compl.¶ 37). There is no allegation that the dispatcher's decision to contact Cabrini as opposed to any other hospital, public or private, was in any way connected to a diagnosis of Doe's mental health. As Doe concedes, EMS decides which hospital to contact based on "what side of the street a patient has been standing or . . .

---

1. Plaintiff has moved for leave to submit a Third Amended Complaint; that motion is being denied today in a separate order. Plaintiff's proposed additional allegations that New York's provision of mental health services is based on day-to-day partnerships be-

tween state officials and private hospitals, and involves consultation between the two (*see, e.g.,* Proposed Third Am. Compl., ¶¶ 120, 143), still fails to allege that the involvement of state actors impacted the private defendants' decision to civilly commit plaintiff.

her address when she telephoned for medical assistance." (Plt.'s Mem. Opp. Mot. Dismiss at 17, Compl. ¶ 36). Therefore, there is simply no set of facts under which the role of the EMS dispatcher was analogous to the public school officials in *Brentwood Academy* or the state mental health officials in *Jensen*, who had a major impact on the nominally private actions at issue in those cases.

Because Doe has not sufficiently alleged that Cabrini ambulance personnel Bogad and Torres were state actors, a factual inquiry into the ambulance workers' role in the ultimate decisions by the Cabrini doctors to commit Doe is irrelevant for the purposes of determining state action. There is no need for extensive discovery when it is conceded that the medical determinations of the Cabrini doctors had absolutely nothing to do with the fact that Doe arrived at the hospital in an ambulance dispatched by EMS, as opposed to arriving there in a taxi, in a private automobile, or by walking in the door. As there has been no proper allegation of state action in this Complaint, the Section 1983 claims against defendants must be dismissed for failure to state a claim.

## C. Doe's State Law Claims

Plaintiff's remaining claims—declaratory relief from liability for care and treatment fees, false imprisonment, assault and battery, trespass, and violation of the Due Process Clause of the New York State Constitution—are all state law claims. As plaintiff and defendants are citizens of New York for purposes of this action, there does not exist federal jurisdiction over these claims on the grounds of diversity. Therefore, the Court declines to exercise supplemental jurisdiction over Doe's remaining claims. *See* 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

Defendants' motion to dismiss the Second Amended Complaint is granted because plaintiff has failed to properly allege the presence of state action in her involuntary hospitalization. Doe's claims pursuant to 42 U.S.C. § 1983 are dismissed with prejudice. Doe's claims for declaratory relief, false imprisonment, assault and battery, trespass, and violation of her state constitutional rights are dismissed without prejudice.