**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1980

E.R.L., by and through her next friend, John Doe,

Plaintiff - Appellant,

v.

ADOPTION ADVOCACY, INC.; JUNE BOND; JOE HAYNES,

Defendants - Appellees,

and

AMY CARR,

Defendant.

Appeal from the United States District Court for the District of South Carolina, at Beaufort. Richard M. Gergel, District Judge. (9:21-cv-00479-RMG)

Argued: October 27, 2022                    Decided: February 14, 2023

Before AGEE and HARRIS, Circuit Judges, and Lydia K. GRIGGSBY, United States District Judge for the District of Maryland, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Robert James Butcher, CAMDEN LAW FIRM, PA, Camden, South Carolina, for Appellant. Steven Chase Parker, LEWIS BRISBOIS BISGAARD & SMITH LLP, Savannah, Georgia, for Appellees. **ON BRIEF:** Deborah J. Butcher, CAMDEN LAW

FIRM, PA, Camden, South Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

E.R.L. is a minor child who suffered severe abuse at the hands of her adoptive parents. She alleges that Adoption Advocacy, Inc., a private agency that contracted with state officials to arrange her adoptive placement, violated her constitutional rights by placing her with known abusers in deliberate indifference to her personal safety and security. The district court dismissed E.R.L.'s complaint, reasoning that Adoption Advocacy and its employees, as private actors, did not owe E.R.L. any constitutional duty. But in certain circumstances, a private party that assumes a state's affirmative constitutional obligations may act under color of law for purposes of 42 U.S.C. § 1983. *See West v. Atkins*, 487 U.S. 42, 56 (1988). Because the district court did not address this theory of state action, we vacate its judgment and remand for the court to conduct this analysis in the first instance.

## I.

E.R.L. was born in Franklin County, Ohio, in 2011. When E.R.L. was young, the state of Ohio terminated her biological parents' rights and placed her in the custody of Franklin County Children Services ("FCCS"). She remained a ward of the state until 2015, when FCCS arranged for her permanent adoptive placement in South Carolina.

FCCS did not itself undertake to identify a suitable home for E.R.L. Instead, Ohio officials contracted with Adoption Advocacy, Inc., a private "child placing agency" registered in South Carolina and licensed by the South Carolina Department of Social Services ("SCDSS"). Under South Carolina law, child placing agencies must follow

3

rigorous procedures when selecting a prospective adoptive family. *See* S.C. Code § 63-9-520; S.C. Code Regs. § 114-4980. These include a pre-placement screening, multiple interviews and home visits, and a comprehensive investigation of the family's background and fitness to care for the child. S.C. Code § 63-9-520(A)(1)(a); S.C. Code Regs. § 114-4980(E)(3). The agency must then monitor the child's pre-adoptive placement, prepare a final report, and present its findings to the family court before an adoption decree may issue. S.C. Code § 63-9-520(A)(2).

These procedures, to the extent they were followed here, proved woefully inadequate to protect E.R.L. from harm. From the moment Adoption Advocacy placed E.R.L. in the prospective home of Herbert and Yulanda Mitchell, she suffered severe emotional and physical abuse.[1] The Mitchells beat E.R.L. with whips, belts, and hangers. They deprived her of food and water while forcing her to watch them eat complete meals. During her pre-adoptive placement, E.R.L. – then a four-year-old girl – lost one and a half pounds. But Adoption Advocacy failed to identify these signs of abuse and instead filed a post-placement report recommending E.R.L.'s adoption. On October 15, 2015, a Beauford County family court granted a final adoptive decree for E.R.L. to the Mitchells based on this recommendation.

---

[1] Because the district court dismissed this action under Federal Rule of Civil Procedure 12(b)(6), "we recount the facts as alleged by [E.R.L.], accepting them as true for purposes of this appeal." *Jackson v. Lightsey*, 775 F.3d 170, 173 (4th Cir. 2014). We note, however, that the Mitchells' subsequent criminal convictions of unlawful conduct toward a child, S.C. Code § 63-5-70(A)(1), confirm the essential nature of their abuse.

The Mitchells' pattern of blatant child abuse – and Adoption Advocacy's role in enabling that abuse – preceded E.R.L.'s 2015 placement.  Sometime before 2010, a family court found that Yulanda Mitchell physically abused a foster child; as a result, SCDSS listed her on its Registry of Abuse and Neglect.  Nonetheless, between 2010 and 2015, Adoption Advocacy placed *four* children with the Mitchells for adoption.  Each child, like E.R.L., was repeatedly starved and beaten.  The children were locked in their rooms, forced to sleep on the floor without blankets, and made to eat feces as punishment.  At school, the children were observed eating from trash cans and drinking from toilets.  All but one of the children fell far below the first percentile for height and weight, and each was subsequently diagnosed with severe failure to thrive.  On many occasions, school and medical officials reported these clear signs of abuse and malnutrition to SCDSS.  But Adoption Advocacy still chose to place E.R.L. with the Mitchells.

Finally, in November 2015 – just weeks after E.R.L.'s adoption was finalized – SCDSS intervened.  After one of the children reported the Mitchells' abuse to his teacher, South Carolina officials placed the children in emergency protective custody.  The state then terminated the Mitchells' parental rights and initiated criminal proceedings.  Yulanda and Herbert Mitchell ultimately pled guilty to multiple counts of unlawful conduct toward a child, S.C. Code § 63-5-70(A)(1), and were sentenced to ten and four years' incarceration, respectively.

5

## II.

In February 2021, E.R.L. filed suit under 42 U.S.C. § 1983, alleging that her placement with the Mitchells violated her Fourteenth Amendment rights. Due to state confidentiality laws and E.R.L.'s youth at the time of her abuse, her counsel had no knowledge of the individuals – presumed to be SCDSS employees – who arranged and supervised her placement. The district court thus allowed E.R.L. to serve an expedited subpoena on SCDSS in order to "properly identify the defendants in this action." Order at 1, *E.R.L. ex rel. Doe v. Adoption Advoc., Inc.*, No. 9:21-cv-479-RMG (D.S.C. Feb. 24, 2021), ECF No. 9. SCDSS, in turn, identified Adoption Advocacy as the sole entity responsible for E.R.L.'s placement. E.R.L. then amended her complaint to bring claims against Adoption Advocacy and its employees alone.

The defendants moved to dismiss the case, arguing that E.R.L.'s complaint failed to allege that Adoption Advocacy's employees acted under color of state law when they placed E.R.L. with the Mitchells. The district court granted the motion, holding that the private agency and its employees did not owe E.R.L. a constitutional duty. *See E.R.L.*, 2021 WL 3493179, at *3 (D.S.C. Aug. 9, 2021). The court recognized that private actors may, under certain circumstances, engage in state action for purposes of § 1983. But it construed E.R.L.'s complaint and briefing to raise only one such theory: that Adoption Advocacy was engaged in a "traditionally exclusive public function." *Id*. at *2. Because "[t]he care of foster children is not traditionally the exclusive prerogative of the State," the court concluded, E.R.L. failed to allege that her adoptive placement implicated state action.

6

*Id.* (quoting *Milburn by Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir. 1989)).

Performing an "exclusive public function," however, is only one way that a private party may act on behalf of the state. *See Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 115 (4th Cir. 2022) (en banc) ("The Supreme Court has identified various circumstances in which a private actor may be found to have engaged in state action."). As relevant here, a private party also "may, under certain circumstances, be deemed a state actor when the government has outsourced one of its constitutional obligations to a private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1929 n.1 (2019) (citing *West v. Atkins*, 487 U.S. 42, 56 (1988)).[2]

In *West*, the Supreme Court identified one such circumstance, holding that a private physician providing medical services in state prison acted under color of law for purposes of § 1983. Because the state "has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated," the Court reasoned, contracting out that obligation "does not relieve the [s]tate of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the

---

[2] We do not in any way fault the district court for failing to parse out these separate theories of state action. Though *West* liability is analytically distinct from "exclusive public function" liability – resting on a private party's assumption of a state's affirmative constitutional duty, rather than a state's traditional prerogative – courts at times conflate the two. Moreover, the parties' exceptionally voluminous filings in the district court did little to clarify these distinct inquiries or otherwise provide guidance on the state action question.

[s]tate's prisoners of the means to vindicate their Eighth Amendment rights." 487 U.S. at 54–56.

Here, E.R.L. alleges that the state of Ohio terminated her birth parents' rights and placed her in the custody of state officials. She also alleges that until her adoption was finalized, Ohio retained legal custody and control over her autonomy. *See* Ohio Rev. Code § 5103.23. And the Fourth Circuit has held that "when a state involuntarily removes a child from her home, thereby taking the child into its custody and care, the state has taken an affirmative act to restrain the child's liberty, triggering the protections of the Due Process Clause." *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010). "Such responsibility, in turn, includes a duty not to make a foster care placement that is deliberately indifferent to the child's right to personal safety and security." *Id.*

Under *West*, the state's delegation of an affirmative constitutional duty to Adoption Advocacy's employees may give rise to liability under § 1983. The district court here did not consider whether *Doe* imposed such an affirmative constitutional duty on the state with respect to E.R.L.'s placement with the Mitchells. Nor did it consider whether the delegation of any such duty to private adoption agency employees might suffice to establish § 1983 liability under *West*. We therefore vacate the court's judgment and remand so that the district court may address these questions in the first instance.[3]

---

[3] Given this disposition, we need not resolve the somewhat perplexing discovery-related arguments raised by each party on appeal. E.R.L. contends that the district court "should have permitted limited discovery to allow [her] to defend the Motion to Dismiss"

## III.

For the reasons given above, we vacate the district court's order granting the motion

to dismiss and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

but identifies no such motion for limited discovery that was denied. In response, Adoption Advocacy argues that the district court appropriately denied "pre-suit discovery" under Federal Rule of Civil Procedure 27. But here, too, Adoption Advocacy identifies no such pre-suit motion, and E.R.L. represents that there is none. To the extent there exists a live discovery dispute between the parties, the district court can address it on remand. We also decline to reach Adoption Advocacy's alternative arguments of qualified immunity and collateral estoppel at this juncture, leaving those, too, for the district court to address if necessary.