**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1567
_____

KARIMU HAMILTON,

Appellant

v.

CHRISTOPHER B. FLANAGAN; ANDREW PANCOAST; KEVIN KOCHANSKI;
RACHEL RIDGEWAY; JUSTIN RIDGEWAY;
RADNOR POLICE OFFICERS Nos. 1, 2, 3, 4, and 5;
SHAWN PATTERSON; STEPHANIE RACHT; PATRICK LACEY;
SGT. CHRISTOPHER GLUCK; BRETT GEAVES; BRYN MAWR FIRE COMPANY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cv-02599)
Chief District Judge: Honorable Mitchell S. Goldberg

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on December 13, 2024

Before: BIBAS, CHUNG, and ROTH, *Circuit Judges*

(Filed: December 17, 2024)
_____

OPINION*
_____

_____

\* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

BIBAS, *Circuit Judge*.

Like good fences, good sewage systems make good neighbors. Karimu Hamilton owns one half of a duplex in Bryn Mawr, Pennsylvania; Rachel and Justin Ridgeway own the other half. On December 3, 2018, the Ridgeways smelled gas or sewage coming from Hamilton's house, so they called 911 to report the smell. Two firefighters knocked on her door and said they wanted to check for gas leaks. Hamilton let them in, and police officer Patterson slipped in as well. The firefighters tested for gas, found cyanide gas, and told Hamilton to open her windows. She told them that her water had been off for two weeks and the gas probably came in through the pipes. They were there for all of six minutes.

The next evening, a county social worker came to Hamilton's house with roughly six police officers to check if her house was safe for her six-year-old daughter. Hamilton let the social worker and police officer Racht come inside. They did a ten-minute walk-through and confirmed that the house was suitable for her daughter.

Town officials soon sent Hamilton a notice ordering her to have a plumber inspect her pipes. When she did not comply, they sent a follow-up notice a month later ordering her to fix two plumbing issues within ten days. In April, they sued her to make her comply. But she refused to open the door to the process server and did not have that work done.

In June, the Ridgeways again called 911, this time to report the smells of gas and smoke coming out of Hamilton's house. Firefighters smelled sewer gas, but Hamilton would not let them or police in. She let in a representative of the gas company, who found no gas leak but did identify a strong sewage odor coming from Hamilton's basement, which he reported to the police.

Three days later, Justin Ridgeway called 911 yet again to report that Hamilton was outside, holding a saw blade and cursing him loudly but not threatening him. The dispatcher alerted police officers that someone with a knife was threatening neighbors. Hamilton says she was walking with hedge trimmers. Officer Lacey arrived, pointed a gun at her, and ordered her to freeze and sit down, but she kept standing. Within minutes, he holstered his gun. Another officer told her to wait for the police chief, who arrived and asked to search her home. She refused consent, and police left. That whole encounter lasted about twenty-six minutes.

Three days after that, twenty police officers arrived with an administrative search warrant. Hamilton let them in. The house was filthy, with raw sewage in the basement, an overflowing toilet, rat and mouse feces, collapsed ceilings, and a sump pump pumping sewage out a basement window. A town official declared the house unfit to live in, so Hamilton moved out. After a court ordered her to fix the house, she did and moved back in the next year.

Hamilton then filed this civil-rights suit under 42 U.S.C. § 1983. She claimed that the warrantless searches violated the Fourth Amendment; that police had falsely arrested her and used excessive force; that they had evicted her without due process; and that they did all this because she is black, violating equal protection.

The District Court granted summary judgment for defendants and sanctioned Hamilton's lawyer. We commend it for patiently parsing the briefing and factual record. We review de novo, drawing all inferences in favor of Hamilton. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019). Even so, all her claims fail.

3

The Ridgeways cannot be sued under § 1983 because they never acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). They are simply neighbors, private parties rather than state actors. Calling 911 to report misbehavior, even falsely, is not enough. Hamilton alleges that they conspired with police but has no evidence of that. *See Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984). The District Court properly concluded that she has no claim against them.

She also has no Fourth Amendment claim against the firefighters or police officers. The firefighters entered Hamilton's home only once, when she consented to their search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). When they asked to enter again another time, she refused entry, so they never searched her house. Officer Patterson entered Hamilton's house in response to the reported smell of gas. The District Court correctly held that qualified immunity shields Patterson because existing precedent does not "squarely govern[]." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). On appeal, Hamilton does not identify governing precedent, but instead challenges that holding in a single sentence. That silence forfeits the issue. *See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 292 n.3 (3d Cir. 2014). Finally, Officer Racht entered with the social worker, but only with Hamilton's consent.

Nor was there any arrest or unreasonably long detention that could count as a false arrest. During the twenty-six-minute interaction, the officers were working diligently to accomplish the purpose of the stop. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir. 1995). The only excessive force alleged was that Office Lacey pointed his gun at her for at most six minutes, but he did that after hearing that someone with a knife was threatening

4

neighbors. The District Court held that Lacey was entitled to qualified immunity. Hamilton, again, did not challenge the District Court's application of qualified immunity on appeal, so she again forfeits the issue.

There is no evidence of racial discrimination and so no equal-protection violation. As Hamilton admits, white residents have likewise been evicted from houses unfit to live in.

Hamilton also got due process. The town warned her of the plumbing problems three times starting in December 2018, almost seven months before she was evicted. She challenges the June administrative search warrant, arguing that there was no cyanide gas or sewage and that her house was habitable. But she offers no evidence that the affidavit supporting the warrant was untruthful or that officers had reason to doubt it. And she cites no authority requiring police to have personal knowledge of or verify the underlying facts.

Finally, Hamilton challenges how the District Court handled her case. It denied *in camera* review of some documents and sanctioned her attorney. Hamilton waited until her reply brief to challenge the District Court's finding of privilege and thus forfeited the issue. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 204 n.29 (3d Cir. 1990). And the sanctions were proper. Hamilton's lawyer made frivolous objections and postponed a deposition by himself, defying the District Court's instructions.

Because all her claims are meritless, we will affirm the District Court's grant of summary judgment.