NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2624

_____

RODERICK JOHNSON,

Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
SUPERINTENDENT GREENE SCI;
JOHN/JANE DOES (1-52)

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4:18-cv-01924)
District Judge: Matthew W. Brann

_____

Submitted Under Third Circuit LAR 34.1(a)
April 23, 2020

Before: AMBRO, SHWARTZ, and BIBAS, Circuit Judges

(Opinion filed: February 16, 2021)

_____

OPINION[*]

_____

---

[*]     This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, <u>Circuit Judge</u>

The Pennsylvania Department of Corrections (the "DOC") and its officials (collectively with the DOC, "Defendants") kept Roderick Johnson in solitary confinement for almost twenty years, even after his conviction and sentence were vacated and he was granted a new trial. Johnson sued under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's guarantees of procedural and substantive due process. The District Court dismissed his complaint. Under our precedents in two analogous cases against the DOC—*Porter v. Pennsylvania Department of Corrections*, 974 F.3d 431 (3d Cir. 2020), and *Williams v. Secretary Pennsylvania Department of Corrections*, 848 F.3d 549 (3d Cir. 2017)—we vacate the District Court's dismissal of Johnson's procedural due process claim and remand for further proceedings. However, we affirm the District Court's dismissal of the remaining claims.

## I. Background

In 1997, Johnson was convicted and sentenced to death on two counts of first-degree murder. Solitary confinement followed in February 1998 while Johnson was on death row. His complaint describes the severe conditions he endured during this confinement. For 22 to 24 hours a day, he was confined to his cell, where he ate, slept, and used the toilet. To leave his cell, Johnson had to submit to a strip search and shackling, after which he was allowed brief "recreation" time in an enclosed space akin to a dog kennel. Although Johnson handled some of his post-conviction proceedings *pro se*, his sole opportunity to conduct legal research was in a law library inside a three-foot

2

by four-foot cage. He could shower only three times a week and was denied most of the benefits offered to other inmates; for example, he was not allowed to participate in the educational offerings, physical activity, religious studies, or music programs available to other prisoners. Johnson asserts that, every three months, prison officials automatically renewed his placement in solitary confinement without conducting any meaningful, individualized assessment of his case. Unsurprisingly, Johnson reports that this continual, profound isolation caused "irreversible damage" to his mental health, including "severe anxiety, depression, panic attacks, paranoia, bipolar mood shifts, [and] suicidal and violent impulses." App. 37–38.

Johnson alleges his solitary confinement continued even as some of the evidence supporting his conviction began to unravel. Several years after he was convicted, Johnson learned the Commonwealth had concealed documents that might have cast doubt on the credibility of the witness who provided the "crucial link" between Johnson and the murder weapon. App. 85. After discovering this critical information, Johnson filed an amended petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), arguing that the Commonwealth had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose material exculpatory evidence.

In 2015, the PCRA court granted Johnson's petition, vacated his conviction and sentence, and called for a new trial. The Commonwealth appealed, which, following local rules, automatically stayed the PCRA court's order while the appeal was pending. Pa. R. App. P. 1736(b). The Supreme Court of Pennsylvania affirmed the PCRA court in December 2017, and the United States Supreme Court denied certiorari. Johnson was not

3

released from solitary confinement until January 2018, after spending almost two decades in near-total isolation.

Johnson soon thereafter filed this civil rights action under 42 U.S.C. § 1983,[1] alleging that his years of isolation without penological justification violated the Eighth and Fourteenth Amendments.[2]  As relief, he sought damages, a declaratory judgment that Defendants had violated his rights, and "lifetime therapy."[3]  App. 31.  In making his Fourteenth Amendment claim, Johnson relied heavily on our precedent in *Williams*— another case brought against the DOC—where we held that prisoners on death row who have been granted resentencing hearings have a liberty interest in avoiding indefinite detention in solitary confinement.  848 F.3d at 558–70.

In May 2019, the District Court granted Defendants' motion to dismiss, finding *Williams* inapplicable because Johnson, unlike the inmate in that case, had an "active capital sentence" even after the PCRA court vacated his conviction and sentence, given that the PCRA court's order was stayed when the Commonwealth filed an appeal.  App. 14.  The District Court also ruled that Johnson's conditions of confinement were not so bad as to be deemed cruel and unusual punishment per our precedent in *Peterkin v. Jeffes*, 855 F.2d 1021 (3d Cir. 1988).  And even if Johnson had stated a claim for an Eighth or

---

[1] Johnson's initial complaint was filed *pro se*; however, he is represented by counsel on appeal.

[2] Johnson also brought an equal protection claim, which he does not press on appeal.

[3] A letter Johnson submitted in March 2020 under Federal Rule of Appellate Procedure 28(j) references an "injunctive claim," but his complaint and opening appellate brief do not reflect such a claim.  ECF 81 at 1.

Fourteenth Amendment violation, the District Court held Defendants would be entitled to qualified immunity. Johnson timely appealed.

Meanwhile, in November 2019, the DOC reached a settlement with death-sentenced prisoners in a related case, *Reid v. Wetzel*, 1:18-cv-00176 (M.D. Pa.). Under the settlement, these prisoners in the Capital Case Unit ("CCU") are no longer subject to solitary confinement.[4]

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction over Johnson's 42 U.S.C. § 1983 suit under 28 U.S.C. § 1331. We have jurisdiction over Johnson's appeal under 28 U.S.C. § 1291. "Our review of an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is plenary." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019). "We accept all factual allegations as true and determine whether[,] under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* (internal quotation marks omitted). "To state a claim under § 1983, a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[4] Insofar as Johnson seeks a declaration concerning his death row confinement, such a request is moot because Defendants' conduct is not capable of repetition yet evading review, as Johnson is no longer housed in solitary confinement in the CCU and Defendants have moved to withdraw their request for the death penalty at his retrial. We take no position on whether Johnson's claim for declaratory relief may be construed more broadly, and the District Court may consider that issue on remand.

## III.    Discussion

### A.  Procedural Due Process Claim

Johnson argues that his allegations stated a viable procedural due process claim under the Fourteenth Amendment.  We agree.

To establish a liberty interest under the Fourteenth Amendment in a challenge to the conditions of confinement, "the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams*, 848 F.3d at 559 (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)) (omission and emphasis in original).  In *Williams*, we held that "inmates on death row whose death sentences have been vacated have a due process right to avoid continued placement in solitary confinement . . . [] absent . . . meaningful protections."  *Id.* at 576.  We described "the devastating effects of extreme isolation and sensory deprivation," both psychological and physical, which risk "disintegrati[ng]" "an individual's very identity."  *Id.* at 566, 568.  Our conclusion was that these hardships were both atypical and significant.  In this context, the state must conduct individualized determinations to justify that extreme level of deprivation.  *Id.* at 574.  While the plaintiffs' claims were barred by qualified immunity, we emphasized that our holding "provides 'fair and clear warning' that, despite our ruling against Plaintiffs, qualified immunity will not bar such claims in the future."  *Id.* at 574 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

In *Porter*—yet another case against the DOC—we applied *Williams* to a prisoner who had been held in solitary confinement for 33 years without penological justification

6

or individualized review, even after his sentence had been vacated. 974 F.3d at 437–40. We rejected arguments virtually identical to those raised by the Defendants in this case.[5] The defendants in *Porter* argued that *Williams* should not apply because the Commonwealth had appealed the order vacating Porter's sentence, which automatically stayed that order pending resolution of the appeal. We declined to distinguish *Williams* on this basis, holding that Porter had a liberty interest in avoiding solitary confinement because, like the *Williams* plaintiffs, he was initially sentenced to death but was later granted a new sentencing hearing, meaning he no longer had an active death sentence. *Porter*, 974 F.3d at 439. The Commonwealth's appeal made no difference. *Id.*

The argument for a procedural due process right is even stronger for Johnson, given that he alleges he was held in solitary confinement after both his death sentence *and his underlying conviction* were vacated. And although Johnson claims he was in solitary confinement for 13 fewer years than Porter, spending 20 years in confinement without hope for relief is equally violative of procedural due process requirements.

Defendants attempt to assert the defense of qualified immunity, but we also rejected that argument in *Porter*, holding that the prisoner's procedural due process rights had been clearly established since 2017 when we decided *Williams*. *Id.* at 449. The same conclusion applies here. Accordingly, Defendants are not entitled to qualified immunity

---

[5] Defendants concede that *Porter* controls the outcome of Johnson's procedural due process claim because "the issues and factual assertions [between the two cases] are too similar to be meaningfully distinguished." ECF No. 89 at 2.

on Johnson's procedural due process claim, and we vacate the District Court's dismissal of that claim.

## B. Eighth Amendment Claim

Johnson argues that his decades in solitary confinement were so cruel and unusual as to violate the Eighth Amendment.[6]  We agree Johnson stated a viable claim, though we ultimately affirm its dismissal because Defendants have a valid qualified immunity defense.

In evaluating Eighth Amendment claims, we apply a two-prong test: (1) the deprivation must be "objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities"; and (2) the prison official must have been "deliberate[ly] indifferen[t] to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted).  Johnson's complaint states a claim under both prongs.

We held Porter had presented sufficient evidence to survive summary judgment on the first prong because it is well established that prolonged solitary confinement poses substantial risks of serious psychological and physical harm.  *Porter*, 974 F.3d at 441–42.

---

[6] Johnson also argues that Defendants' actions violated his right to substantive due process under the Fourteenth Amendment.  "Under the more-specific-provision rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'"  *Porter*, 974 F.3d at 447 (quoting *Lanier*, 520 U.S. at 272 n.7 (1997)).  Johnson's "substantive due process claim challenges the same conduct as his Eighth Amendment claim, namely, his prolonged solitary confinement."  *Id.* at 448.  Accordingly, the Eighth Amendment provides the appropriate vehicle for considering Johnson's claim.

We described the anxiety, depression, paranoia, panic attacks, and suicidal ideation that solitary confinement can cause—which Johnson alleges he also suffered. *Id.* at 442. The defendants in *Porter* argued, as Defendants do here, that an Eighth Amendment claim was barred under our precedent in *Peterkin*, where we held that a class of prisoners bringing a facial challenge to death row conditions "ha[d] not established that the totality of the conditions of their confinement constitutes cruel and unusual punishment." 855 F.2d at 1022. We rejected that contention, concluding that *Peterkin* did not control because (1) Porter (like Johnson, and unlike the *Peterkin* plaintiffs) was making an as-applied challenge, not a facial challenge; (2) Porter (again, like Johnson) had spent substantially more time in solitary confinement than the *Peterkin* plaintiffs, who had spent at most four years in such confinement; and (3) the research and caselaw have advanced since *Peterkin* was decided, making the devastating effects of prolonged solitary confinement abundantly clear. *Porter*, 974 F.3d at 443–44. The same conclusions apply here. The objective evidence is indisputable: "Years on end of near-total isolation," like those which Johnson alleges he endured, "exact a terrible price." *Davis v. Ayala*, 576 U.S. 257, 289 (2015) (Kennedy, J., concurring).

We further held that a reasonable jury could find Porter satisfied the second prong of the Eighth Amendment test because "the substantial risks of prolonged solitary confinement are 'obvious,' 'longstanding, pervasive, well-documented, [and] expressly noted by prison officials in the past.'" *Porter*, 974 F.3d at 445 (quoting *Farmer*, 511 U.S. at 842) (alteration in original). We observed that DOC officials had "publicly

9

acknowledged these harms." *Id.* at 446. This reasoning applies with equal force here. Accordingly, Johnson's complaint states an Eighth Amendment claim.

However, we are also bound by our holding in *Porter* that the Eighth Amendment right in this context was not clearly established at the time of Porter's (and Johnson's) solitary confinement, so the Defendants can assert a qualified immunity defense. *Id.* at 450–51. Johnson attempts to distinguish *Porter* by emphasizing that his case was dismissed at the pleading stage, rather than on summary judgment, and argues that a more developed record would help him prove the right was clearly established. This procedural distinction is unavailing, as the facts and law are too similar to *Porter*. Additional discovery could not overcome the lack of binding, precedential opinions clearly establishing the Eighth Amendment right at issue at the time of Johnson's solitary confinement. Accordingly, we must affirm the dismissal of Johnson's Eighth Amendment claim. We emphasize, however, as we did in *Porter*, that going forward it is well established in our Circuit that solitary confinement of the sort alleged by Johnson and Porter satisfies the second prong of the Eighth Amendment test and supports an Eighth Amendment claim.

\* \* \* \* \*

For these reasons, we vacate in part and affirm in part. We vacate the District Court's dismissal of Johnson's procedural due process claim. We affirm the Court's dismissal of Johnson's Eighth Amendment claim, though only on the ground that Defendants are entitled to qualified immunity. We affirm the dismissal of Johnson's

10

substantive due process claim. And we remand to the District Court for further proceedings.