# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1875
_____

Hamdi A. Mohamud

*Plaintiff - Appellant*

v.

Heather Weyker, in her individual capacity as a St. Paul Police Officer

*Defendant - Appellee*

------------------------------

Goldwater Institute; Cato Institute; New Civil Liberties Alliance

*Amici on Behalf of Appellant(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 11, 2025
Filed: July 23, 2025
_____

Before LOKEN, BENTON, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

We have decided this question before: "whether a St. Paul police officer acted under color of state law when she allegedly lied to protect a federal witness while serving on a federal task force." *Yassin v. Weyker*, 39 F.4th 1086, 1087 (8th Cir. 2022). Our answer, once again, is she did not. *See id.*

I.

This appeal is the latest chapter in a series of civil-rights lawsuits against Heather Weyker for her part in a federal investigation. *See generally id.*; *Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020); *Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019). A full-time St. Paul police officer, Weyker became a cross-deputized federal agent when she joined a task force investigating an interstate sex-trafficking ring. *See Yassin*, 39 F.4th at 1087–88.

It took her to Nashville, where she received a call from a federal witness, Muna Abdulkadir, who had been in a fight with several other women, including Hamdi Mohamud. Looking to protect her, Weyker reached out to the Minneapolis police officer on the scene, Anthijuan Beeks. After identifying herself as a St. Paul police and joint-task-force officer, she introduced others in the room, including the lead federal prosecutor and a federal agent. "[Her] message was clear: Abdulkadir was a witness in a federal investigation and the other women involved in the fight had, upon 'information and documentation,' been out 'to intimidate' her." *Id.* at 1088.

The first part was true, but everything else Weyker said was false. There was no "information" or "documentation" that anyone was trying to intimidate Abdulkadir. Nevertheless, based on what Weyker told him, Officer Beeks arrested Mohamud and the others for witness tampering. *See* Minn. Stat. § 609.498; *see also* 18 U.S.C. § 1513(b) (witness retaliation). In her affidavit supporting federal charges, Weyker disclosed her joint role as an "FBI Task Force Officer / St Paul MN

-2-

PD Officer." (Capitalization omitted). The government eventually dismissed the case against Mohamud, but not before she had spent about 25 months in custody.

Mohamud sued Weyker on a wrongful-arrest theory, split between two claims. One was based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which accounted for the possibility that Weyker was acting as a federal officer at the time. The other, a claim under 42 U.S.C. § 1983, applied if she had been acting "under color of" state law. *Id.* We took *Bivens* "off the table" in an earlier case by holding that it does not extend to a situation like this one. *Ahmed*, 984 F.3d at 571. We then foreclosed a § 1983 claim when we concluded that Weyker had not acted under color of state law. *See Yassin*, 39 F.4th at 1090–91.

Once we did, Weyker moved for dismissal, or, in the alternative, for summary judgment in this case. Mohamud responded by asking for limited discovery and permission to amend her complaint to "provide more detailed allegations and newly uncovered evidence" to show that Weyker was "simultaneously acting under color of both state and federal law."

The district court[1] denied both of her requests because neither would make a difference. Further discovery would be a dead end, and the proposed amendment would be futile because it would not "yield a conclusion that differ[ed] from . . . *Yassin*." Summary judgment was inevitable either way.

Mohamud disagrees. Her position on appeal is straightforward: new facts show that Weyker must have been acting "under color of state law" when she misled Officer Beeks and provided false facts in an affidavit. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983. Our task is to figure out whether the new facts she alleges are enough to tip our analysis from *Yassin* the other way.

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

## II.

Every complaint, amended or not, must include a "short and plain statement" showing an entitlement to relief. Fed. R. Civ. P. 8(a)(2). To meet this requirement, it must plead enough facts, "accepted as true, to state a claim . . . that is plausible on its face." *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (citation omitted). If an amended complaint would not, it can be denied as futile, a legal conclusion that we review de novo. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Here, the district court concluded that, even granting all inferences in Mohamud's favor, neither the new facts nor the existing record would show that Weyker was "clothed with the authority of state law." *West*, 487 U.S. at 49 (citation omitted); *see Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020) (reviewing summary-judgment rulings de novo).

## A.

In a civil-rights action under § 1983, a plaintiff must show (1) "the violation of a right secured by the Constitution and laws of the United States" (2) by "a person acting under color of state law." *West*, 487 U.S. at 48. "Color of law is rooted in authority": was an officer's conduct "fairly attributable to the State"? *Yassin*, 39 F.4th at 1090 (citation omitted). To decide whether it was, "the focus is on the nature and circumstances of [Weyker's] conduct and the relationship of that conduct to the performance of . . . official duties." *Id.* (citation omitted). For us to reverse, Mohamud bears the burden of proving that Weyker was "clothed with [state] authority when she acted." *Id.* at 1088–89.

Although it is a legal question, the under-color-of-law determination "can turn out to be quite 'fact[]bound.'" *Id.* at 1090 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)) (alteration in original). Just not in cases like this one, when the material facts are undisputed and "[w]e are not writing on a blank slate." *Id.* at 1089. *Yassin*, after all, is the spitting image of this case: the same officer acting

in the same way when faced with the same circumstances. It is the logical place to start.

We concluded there that "[s]tate law had nothing to do with the nature and circumstances of Weyker's conduct." *Id.* at 1090 (citation omitted). "At the time," she was working on the *federal* sex-trafficking investigation "as a Special Deputy United States Marshal." *Id.* The investigation was under the supervision of a federal prosecutor and another federal agent, who were in the room when she received Abdulkadir's call. *See id.* at 1088. While speaking with Officer Beeks, she referenced "her federal-task-force role" and explained that Abdulkadir was an important witness in a federal case. *Id.* at 1091. Based on these facts, we concluded that Weyker "act[ed] or *purport[ed] to act* in the performance of [her federal] duties, even if [s]he overstep[ped] [her] authority and misuse[d] power." *Id.* (citation omitted) (emphasis and alterations in original). The district court followed this line of reasoning in granting summary judgment in this case.

The federal nature of Weyker's actions did not change just because she had first encountered Abdulkadir years before during a state investigation. To the contrary, Abdulkadir's role had changed right alongside her own, from an informant in local human-trafficking cases to a witness in a multi-state *federal* investigation. *See id.* at 1088; *cf. King v. United States*, 917 F.3d 409, 433–34 (6th Cir. 2019) (deciding that a cross-deputized officer who pursued a fugitive with a state arrest warrant "remained a federal agent" when "the task force's decision to apprehend [him] was made by virtue of an exercise of federal authority"), *rev'd on other grounds sub nom.*, *Brownback v. King*, 592 U.S. 209 (2021). In short, the authority Weyker was exercising on behalf of Abdulkadir was federal, even if they had dealt with each other before. *See Yassin*, 39 F.4th at 1091.

It also makes little difference that the federal task force described the St. Paul Police Department as the "lead agency."[2] Even if Weyker's cross-deputization and the involvement of the U.S. Attorney were not enough to make her actions federal, the investigation had grown to include at least one other state, Tennessee, and multiple federal agencies, including the FBI, Immigration and Customs Enforcement, the Department of Homeland Security, and the Secret Service. She then purported to act based on her *federal* authority when she explained Abdulkadir's significance to Officer Beeks and provided an affidavit supporting the filing of federal charges against Mohamud. *See id.* (observing that Weyker's work retained its "federal character" even if some of her "local practices" crept in); *see also King*, 917 F.3d at 433 ("As a deputized federal agent, [the state detective] carried federal authority and acted under color of that authority rather than under any state authority he may have had as a . . . detective."). Acting as a federal agent under the supervision of federal officials, she protected a federal witness in a federal investigation. "State law had nothing to do with" it. *Yassin*, 39 F.4th at 1090.

B.

*Yassin* also forecloses Mohamud's simultaneous-action argument. Her theory is that officials can exercise both federal and state authority at the same time. For support, she points to the line of cases treating private parties as state actors when there is joint action with state officials. *See, e.g.*, *Evans v. Newton*, 382 U.S. 296, 299 (1966) (holding that private conduct can become "so impregnated with a governmental character" as to become "state action"); *Murray v. Wal-Mart, Inc.*,

---

[2]Agreements from other unrelated federal task forces are even less helpful. One comes from a 2005 Joint Terrorism Task Force and the other from a 2011 Cyber Crime Task Force. Both say that "[l]iability for violations of federal constitutional law rests with the individual agent or officer pursuant to *Bivens* . . . or pursuant to 42 U.S.C. [§] 1983 for state and local officers or cross-deputized federal officers." They just state what we already know: officers can be liable under § 1983 or *Bivens* depending on the circumstances, which begs the question we are trying to answer. *See Lindke v. Freed*, 601 U.S. 187, 197 (2024) (recognizing that the under-color-of-state-law analysis "demands a fact-intensive inquiry").

874 F.2d 555, 558–59 (8th Cir. 1989) (holding that Wal-Mart acted jointly with a local police force). *But see Yassin*, 39 F.4th at 1091 n.3 ("Federal and state officers work together all the time without clouding their distinct sources of authority . . . ."). Her view would give plaintiffs a choice between *Bivens* and § 1983 in cases like this one. Whichever one works.

Even if a government official could theoretically exercise federal and state authority simultaneously, Weyker did not do so here. For courts that apply a categorical rule in these situations, a cross-deputized state officer always acts under color of federal law. *See, e.g.*, *King*, 917 F.3d at 433. And for those that recognize the possibility that a federal-task-force officer *can* exercise state power, *see, e.g.*, *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 870 (10th Cir. 2016), the circumstances here clearly point toward federal authority, not some mixture of the two, *see Yassin*, 39 F.4th at 1091 (noting a lack of "*any* actual or purported relationship between" Weyker's conduct and her duties as a St. Paul police officer (emphasis added) (citation omitted)). Either way, *Bivens* would be the only option.

## III.

More discovery would not have helped. *See Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 836 (8th Cir. 2015) (recognizing that district courts have "wide discretion" in dealing with discovery requests (citation omitted)). When it came to clarifying Weyker's history with Abdulkadir, we have already explained why exploring it further would not have tipped the balance toward state action. Nor would having Mohamud delve into the circumstances of her own arrest, the course of the investigation, or the credibility of Officer Beeks and Abdulkadir, which were relevant to qualified immunity, but little else. The bottom line is that the district court could not have abused its discretion in denying discovery that would not have made a difference. *See Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 798 (8th Cir. 1996) (explaining that the district court could deny a discovery request that would not have helped establish the plaintiff's claim); *Strategic Energy Concepts, LLC v. Otoka Energy, LLC*, 120 F.4th 1339, 1345 (8th Cir. 2024) (reasoning that the

district court does not abuse its discretion when it denies a "futile" motion (citation omitted)).

## IV.

We accordingly affirm the judgment of the district court.

_____